# CHARLESTON

### ARBENZ v. EXLEY, WATKINS & CO.

### Submitted March 9, 1905. Decided April 11, 1905.

1. **LANDLORD AND TENANT—*Notice to Quit—Sufficiency of Notice.***

   Under a tenancy from year to year a letter from the tenants to the landlord saying: "We beg to advise that we have vacated the premises known as west building on 20th street destroyed by fire on September 15th last, and hereby surrender possession of same," is not a sufficient notice to quit, and does not discharge the tenants from liability thereafter for rent. (p. 583.)

2. **LANDLORD AND TENANT—*Tenancy by the Year—Sufficiency of Notice to Quit.***

   Under a tenancy from year to year a letter to the lessor from the lessees saying that the lessees had vacated and surrendered the premises, though accompanied by such vacation, and a defense by the lessees in court of an action by the lessors for rent for a part of the time after such notice, will not operate to end the tenancy or discharge the lessees from rent accruing after that involved in the first action. (p. 585.)

3. **LANDLORD AND TENANT—*Notice to Quit—What Sufficient.***

   A notice to end a tenancy from year to year must designate the time when the tenancy is to close, either by specifying the day of the close of a current year, or by saying that it is to close at the end of a current year. (p. 583 )

Error to Circuit Court, Ohio County.

Action by John Arbenz, Sr., against Exley, Watkins & Co. Judgment for defendants, and plaintiff brings error.

*Reversed.*

HUBBARD & HUBBARD, and I. P. ARBENZ, for plaintiff in error.

HENRY M. RUSSELL, for defendants in error.

BRANNON, PRESIDENT:

John Arbenz, Sr., made a written lease, but not under seal, to Exley, Watkins & Co., leasing for a term of five years and three months a brick building, including the vacant parts of certain lots, in the City of Wheeling, the term commencing January 1, 1896, and ending March 31, 1902, for the annual rent of $700.00, commencing April 1, 1896, payable in monthly instalments. The lessees took possession on the first week of January, and occupied the premises, paying rent monthly. On September 15, 1898, a fire totally destroyed said building. The lessees paid rent for that September and also for October, but with the rent of October sent a letter, October 31, 1898, to Arbenz, informing him that they hereby vacate the premises and surrender them to him.

In November, 1898, Arbenz sued out a distress warrant against said lessees for rent from November 1, 1898, to October 31, 1899, and the same having been levied, a forthcoming bond was given, and in the proceedings upon it in the circuit court of Ohio county a verdict was rendered for the plaintiff for $502.54, after deducting for failure to repair an engine, and judgment given thereon, and the defendants took a writ of error. The defendants filed a plea denying grounds of attachment, and denying all liability for the rent claimed.

The judgment below was affirmed by this Court. Those matters will appear in 52 W. Va. 476. On August 1, 1903, Arbenz brought *assumpsit* against Exley, Watkins & Co. to recover rent accruing later than that recovered in the proceeding above mentioned.—to recover rent for the period beginning November 1, 1899, and ending December 31, 1902, a period of thirty-eight months, at $700.00 per year, and the suit resulted in a verdict for only $148.15, that is, for the two months of November and December, 1899, the court holding that no recovery could be had after the current year ending that date, on the theory that the tenancy from year to year then closed. The theory against the right to recover

is, that a few days after the fire the defendants wrote Arbenz the following letter: "Oct. 31st. 1898. Mr. John Arbenz, City: Dear sir:—We beg to advise that we have vacated the premises known as west building on 20th street, destroyed by fire Sept. 15th, last, and hereby surrender possession of same. Yours truly, Exley, Watkins & Co."

On the former writ of error we held that for want of a seal to the lease the term of years named in it was not created, but that it created an estate from year to year, and that said letter did not operate as a notice to quit, to end the tenancy so as to preclude recovery of rent up to November 1, 1899, the rent in litigation in the former proceeding. We did not go further, as no later rent was involved in that case. The question presented in the second suit is, Did the tenancy end 31st December, 1899? Did that letter close the tenancy and stop the rent at that date, the close of the current year 1899? For the defendants the contention is, that the letter, accompanied by actual vacation of the premises, and coupled with the fact that in the circuit court in April, 1899, Exley, Watkins & Co. made defense in the former proceeding denying liability for rent, operated as a notice to quit and closed the tenancy 31st December, 1899. Take the letter. The question rests mainly on it. It states the facts that the lessees had vacated, and then surrendered possession. It does not notify that at the end of a current year in future the tenant would quit, but states present acts or past, vacation and surrender. The common law, for centuries, has required, in order that lessor and lessee, under a tenancy from year to year, may close the tenancy of his own motion, that a notice to quit should be given six months before the end of the current year. That period or time of notice must be prior to the close of a year. The Code, chapter 93, section 5, provides that, "A tenancy from year to year may be terminated by either party giving notice in writing to the other, prior to the end of any year, for three months, of his intention to terminate the same." That provision recognizes as still continuing the common law estate of tenancy from year to year and the process of terminating it by notice to quit, and changed it only in requiring written notice and fixing a shorter time of notice. Hence it seems that we must appeal to the common law and its mode of notice to test the

the efficiency of the letter as notice to quit. It does not
notify of a future act of quitting, but relies on past vacation
and present surrender of possession for the effect of the
letter. It does not name a day or time in future when the
tenancy is to end. The profession has always regarded this
as a requisite in a notice to quit, I think. 2 Taylor Landlord
& Ten., section 476 says: "Form of. —— The notice may
be given to quit on a particular day; or, in general terms, at
the end of the current year of the tenancy, which will expire
next after the service of the notice; or, in one month after
the next rent-day. The latter form of expression is generally
used where the landlord is ignorant of the period when the
tenancy commenced; and it is preferable even when the com-
mencement of the tenancy is known, as it provides against
any misapprehension of the exact day when the tenant
entered." 1 Washburn, Real Prop., section 810 says: "No-
tice, the time. —— Whether a longer or shorter time of
notice is required, it must, in order to be binding, clearly
indicate the time when the tenancy is to expire, and, of
course, must be given a sufficient number of days before the
time so indicated." The particular question before us is,
whether that letter is bad as a notice to quit because (1) it is
a quitting at its date, not notice of a future quitting at the
end of a year, and (2) because it fails to state a time for
quitting. Under the above and many other authorities we
are driven to say that it did not end the tenancy at any time.
*Currier* v. *Barker*, and *Stewart* v. *Harding*, 2 Gray 224,
335; *Hanchet* v. *Whitney*, 1 Vermont 311; *Hunter* v. *Frost*,
47 Minn. 1; *Grace* v. *Michand*, 50 *Id.* 139; *People* v, *Gedney*,
15 Hun 475; *Prescott* v. *Elm*, 7 Cush. 346; *Phoenixville* v.
*Walters*, 147 Pa. St. 501; *Berner* v. *Gerhardt*, 87 Mo. App.
409; *Huntington* v. *Parkhurst*, 24 Am. St. 146; *Finklestein*
v. *Herson*, 55 N. J. L. 217; *Waters* v. *Williamson*, 59 *Id.*
337; *Godard* v. *S. Carolina Railroad*, 2 Rich. (S. C.) 346;
*Huyser* v. *Chase*, 13 Mich. 98; *Rollins* v. *Moody*, 72 Me.
135. The text book writers seem to so regard the law. I
quoted from some above. Tiedman on Real Estate, section
218, says that "the notice must not only be given for a cer-
tain length of time before the estate is to end, but the
estate can only be determined at the expiration of the time
during which the tenant may lawfully hold, *i. e.*, at the end

of the rental period; it can only be determined at the end of the year, quarter or month, according as the tenancy is respectively a yearly, quarterly or monthly tenancy. *The notice must be sufficiently clear in its terms as to the time when the tenancy is to expire.*" 3 Minor's Inst., Part 1, 241. "The notice * * * must end with the period at which the tenancy commences." 2 Kerr, R. Prop. 1310. 1 Lomax Dig., 164; 1 Greenleaf's Cruise, R. Prop., 248, section 26. Chitty on Contracts, (11th Ed.) 485, speaking of English common law, says, "The notice must be framed with reasonable certainty as to the time of quitting." In *Currier* v. *Barker*, 2 Gray 227, it was held that a present demand or notice to quit was insufficient, and the rule is stated as follows:—"The notice to quit is technical, and is well understood. It fixes a time at which a tenant is bound to quit, and the landlord has a right to enter at a time at which the rent terminates. The rights of both parties are fixed by it, and are dependent on it. Should the landlord decline to enter, and the tenant quit according to notice, the tenant could no longer be holden for rent, although he had given no notice to the landlord. The lease is 'determined' by such notice, properly given by either party. It is manifest, therefore, that when such consequences depend upon the notice to be given, the notice should fix with reasonable exactness the time at which these consequences may begin to take effect. See also *Walker* v. *Sharpe*, 14 Allen 45." Of course, much force is to be given to the harmonious construction of the many cases by the text writers. Still, I have had a question whether the cases mean only that period of time before the termination must expire on the day of the close of the year, or that the notice must designate the time when the tenant intends to quit. Such seems to be the law. The only question is, Does it fit this case? It does seem of great force to say, that the only object of notice is to manifest an intent of one party to end the tenancy, and to inform the other party of that intent, and that the letter in this case did that. Arbenz surely knew that his tenants designed to end the tenancy, because he knew that they had quit the premises and surrendered possession. What more could formal notice do? True, it could not go to end the tenancy 31st December, 1898, because from the letter to that date was not three months.

But could it not end the tenancy at close of 1899? Now, if the tenants had on the date of the letter given notice that they would quit 31st December, 1899, who would say that it would not be sufficient? Did not that letter disclose intent to quit? By law it could not operate to close the tenancy 31st December, 1898, because the time would be too short. Would it not operate then as soon as the law would let it, just as a formal notice at the date of the letter would have done, that is, December 31, 1899? Arbenz had notice of his tenants' intention to quit. Why could not that notice operate at the earliest date the law would allow it to operate? In addition, if anything more could in reason be demanded to disclose the intention of the tenants to stop the tenancy and to inform Arbenz of such intention, we add that the tenants in April, 1899, in court defended the claim of Arbenz to rent prior to November, 1899. Their defense was that the building was destroyed and they had sent that letter and abandoned possession. But here comes in the answer that the statute, reiterating common law prevalent for centuries, tells how the tenant must end his tenancy, that is, by written notice. It is dangerous for us to insert an exception by saying that if the landlord had knowledge of the tenant's intention, it stands for notice, It may not be improper to say that I have given labored investigation of this case, as other members of the Court have, and I have been impressed with the weight of the line of defense just stated, and have struggled to find a justfication for adopting it, as the payment of the whole rent by the defendants, without any return, works a hardship, which all the members of the Court appreciate; but I am compelled to say that to decide against the plaintiffs would be to fly in the face of practically a unanimity of authorities through several hundred years in all quarters where the common law rules. As applied generally the rule is right; as applied in this case, it works hardship; but we cannot bend a fixed rule to suit a hard case.

Counsel says that the statute only requires three months notice before end of year, and that the written notice need not specify time of quitting, and that to say so is to read such a requirement into the statute. We answer that the statute only recognizes as the law already the requirement of notice to terminate a tenancy from year to year, and it has

not changed the common law requisites of the notice. We have cited to us the Georgia case of *Roberson* v. *Simons*, 34 S. E. 604, in which the opinion says that while mere abandonment of premises at the end of the year "might perhaps" be sufficient to bring home notice to the landlord of the tenant's intention to terminate the tenancy, "so as to prevent the landlord recovering rent beyond the year immediately succeeding such abandonment." This is mere opinion. It was not at all in judgment—a thought in the mind, not maturely considered for actual judgment. *Betz* v. *Maxwell*, 48 Kansas 143, seems to support the defense in saying that as the landlord from abandonment of possession knew of the intention to quit, formal notice was useless. This seems to be answered by the quotation above from *Currier* v. *Barker*. And it runs counter to the principle which all authorities assert, that mere abandonment will not dispense with notice, but the tenancy and liability for rent go on. "The tenant's liability for rent continues till he puts an end to the estate by notice, whether he continues to occupy the premises or not." 1 Washb. R. Prop., section 807. So far is this so, that the landlord may, at his choice, relet and recover the difference, or let the premises stand vacant. *Merrill* v. *Willis*, 51 Neb. 162; 6 Ballard R. Prop., section 462; *Schuiller* v. *Donnell*, 16 Ala. 73. *Adams* v. *Cohoes*, 157 N. Y. 175, is strongly relied on. The judge writing the opinion does say that knowledge of intention to quit brought home to the landlord will dispense with formal notice. In the vast mass of New York decisions it is readily noticed there are multitudinous conflicts. This case is in conflict with other decisions in New York itself. It seems that the New York statutes entered into the case.

We do not go on the theory that the former decision is *res judicata* to fix right to recover the rent involved in the present case. That case was for rent for a certain period of time—this for another. That case is *res judicata* to establish that it was a tenancy from year to year, but did not say how long. A case may settle principle, but not be *res judicata* as to matters not immediately involved.

We are compelled to reverse the judgment and render judgment for the plaintiff for his demand.

*Reversed.*