# CHARLESTON

### COFFMAN v. SAMMONS

### Submitted March 9, 1915.   Decided March 16, 1915.

1. LANDLORD AND TENANT—*Lease—Construction.*

   A loosely drawn lease is to be interpreted in the light of the situation of the parties, the circumstances and the purpose for which it was executed.   (p. 15).

2. SAME.

   A lease of a large tract of uncleared land guaranteeing to the lessee five crops therefrom, may be construed as giving five crops from each of such portions of the land as shall be cleared from year to year by the lessee, in the exercise of reasonable diligence.   (p. 15).

3. SAME—*Lease—Validity and Effect.*

   The term contemplated by a lease so interpreted is one for more than five years and can be created only by deed or will; and if the lease is not under seal, it is a mere contract for such a term, passing no legal title.   (p. 16).

4. SAME—*"Tenant from Year to Year."*

   One who enters under such an unsealed lease and clears and cultivates the land is a tenant from year to year.   (p. 17).

5. SAME—*Tenancy from Year to Year—Termination—Notice.*

   Termination of such a tenancy by the landlord, without the consent of the tenant, requires notice in writing of his intention to terminate it, to be given three months prior to the end of the year.   (p. 17).

(ROBINSON, JUDGE, dissenting.)
(LYNCH, JUDGE, absent.)

76 W. Va.

Error to Circuit Court, Greenbrier County.

Action by Tilden Coffman against Samuel Sammons. Judgment for plaintiff, and defendant brings error.

*Reversed and remanded.*

*W. R. Bennett* and *J. W. Arbuckle,* for plaintiff in error.

*Henry Gilmer,* for defendant in error.

POFFENBARGER, JUDGE:

The complaint on this writ of error goes to the court's direction of a verdict for the plaintiff in an action of unlawful detainer, commenced in a justice's court and carried to the circuit court by an appeal.

The rights of the parties turn mainly on the interpretation of a written agreement by which the plaintiff leased to the defendant a certain tract of land. This very informal instrument reads as follows: "I this day lease to Sam Sammons all of the tract of the White oak flat known as the Driscoll tract of timber running with the county road known as the Coffman road and I am to give him five years or crops beginning on January 1, 1908 and he is to sow it in grass the last crop and he is to have and barn as long as the lease and to have a rightaway and the *lime-stone* rocks on the place. April 29, 1907. Tilden Coffman." The two copies, one of which was retained by each of the parties, were both lost, and, later, Coffman, on application of the defendant, executed another paper, embodying his recollection of the substance of the original one. The second paper after describing the tract of land, proceeds as follows: "The party of the second part is to hold the Driscoll tract of land which is known as the Coffman place and is to have the use of house, stable and little cabin down at the road, and is to hold same until fifth crop is *halled* away."

"The 1st day of January 1908 I least to Sam Sammons the Driscoll tract of land lying along the railroad for five crops from date and the party of the second part is to *sew* it in grass seed the last *cropp,* and the party of the second part is to have all of the lime stone rock on my place."

Some time after the second paper had been prepared and

delivered, the original one was found and both were put in evidence on the trial of the case. The one first prepared was written with an indelible pencil and through the words "years or," before the word "crop," a line was drawn with the same pencil or one like it, evidently for the purpose of canceling those words. Coffman, the lessor, prepared the paper, but denies that he made the cancellation mark. On the other hand, Sammons and his sister both swear he did it, in the preparation of the paper and before delivery thereof.

Whether the words "years or" were cancelled or are to be considered a part of the agreement was made a question for jury determination by the conflicting evidence as to the origin of the cancellation mark. In its action and rulings concerning the evidence, the trial court, therefore, was bound to assume that the jury might find these words had been cancelled, and leave that question open for their determination. And in reviewing the action of the trial court here, due regard must be had to this jury question.

Reading the agreement as one binding the lessor to allow the lessee five crops, because the jury might have found that to be the true reading of the agreement, it is necessary to inquire whether crops mean the same as years, and, if so, whether the five year period is applicable to the whole tract or to such portions thereof as would be cleared from year to year, practically all of the tract having been uncleared at the date of the paper. It could hardly be said that, in the abstract, "crops" mean the same as "years," for it is possible to produce, from the same land, more than one crop in one year. More than one crop of alfalfa can be taken from the same land in a year. It is possible, in this latitude, to raise a crop of potatoes and a crop of turnips on the same land in the same year. Hence, the attorney for the defendant in error rightly conceeds ambiguity in the contract. He insists, however, that, read in the light of the circumstances and situation of the parties, their purpose was to lease the entire tract for a period of five years, the lessee taking the risk of getting five crops. The tract contained 97½ acres and had to be cleared before it could be cultivated. Between the date of the original lease, April 29, 1907, and the planting season of 1908, there was a period of about one year. The land was

not in condition for cultivation. The tenancy was not the ordinary one of producing land. If it had been, the controversy about the terms of the lease might have been immaterial. It was an agreement on the part of the defendant to clear the land and, in consideration of the clearing, to have five crops from it as he cleared it, and there is no express undertaking on his part to clear all the land in one year, nor to forego any of the five crops from the land he expected to clear. On the contrary, the lessor expressly agreed to give him five crops. The agreement was one for clearing and cultivation, not merely for cultivation. Like every other loosely drawn instrument, this one must have a reasonable interpretation, and fairly and reasonably interpreted, it obligated the lessee to clear the land with reasonable diligence and the lessor to permit him to take five crops off of each portion of the land as it should be cleared. At the date of the lease, not more than two or three acres of the land had been cleared. It had been heavily timbered. The best of the timber had been taken off by one Driscoll, and Sammons, the lessee, bought the residue and was engaged in the removal thereof, when he took the lease. Coffman leased to him the whole of the tract, not merely the small portion already cleared, and expected the whole of it to be cleared and cropped. Sammons was a man of limited means with whom Coffman had had previous business transactions, and it was clearly competent for the jury to say neither of the parties contemplated the clearing of the entire tract in a single year or less time, so as to give the five crops stipulated for. This view finds some support in the last words of the paper. The lessee was given the use of the barn and something else, presumably a small house, as long as the lease should run, not merely until five crops should be obtained.

So construed, however, the lease vests no legal title in the lessee, for the term created by it would extend beyond five years and a term for more than five years can be created only by deed, or will. Sec. 1, ch. 71 of the Code, serial sec. 3739; *Arbenz* v. *Exley, Watkins & Co.,* 52 W. Va. 476. As the paper relied upon is not under seal, it is, at best, only an executory contract for an estate for years to be created by deed, specific performance of which may be had in equity,

according to some authorities. Tiffany on Landlord and Tenant, p. 393; Taylor on Landlord and Tenant, sec. 37. Though in a sense ambulatory, the paper so construed and applied would hold the buildings and portions of the land much longer than five years.

Nevertheless, one who enters into possession, under a written lease without a seal for a period of more than five years, and pays rent periodically is a tenant from year to year, and his tenancy can be terminated only by giving the notice required by the statute. *Arbenz* v. *Exley, Watkins & Co.*, cited. Here there was no periodical payment of money, but the clearing of land was the equivalent thereof. It constituted a valuable consideration for the use of the land. Hence, Sammons was a tenant from year to year. No notice of the termination of his tenancy was given him. The landlord verbally notified some of his under-tenants not to put in crops and prevented them from doing so, but he seems to say he did that because five crops had been already taken from the particular piece of land they were then plowing or about to plow. There is no evidence of any written notice. The statute requires the notice to be in writing and to be served upon the tenant, or some one holding under him the leased premises or a part thereof, at least three months prior to the end of the year. Sec. 5, ch. 93, serial sec. 4131; *Arbenz* v. *Exley, Watkins & Co.*, 57 W. Va. 580.

From these conclusions, it results that the court erred in its direction of a verdict for the plaintiff, wherefore the judgment will be reversed, the verdict set aside and the case remanded for a new trial.

*Reversed and remanded.*