# CHARLESTON.

GEO. COOPER WILSON *v.* JOHN RIFFLE *et al.*

Submitted September 28, 1920. Decided October 5, 1920.

1. CONTRACTS—*Contract Impossible of Performance as Provided by its Terms May be Executed in Different Way Consistent With Law.*

   If the manifest purpose of a contract is impossible of accomplishment in the manner in which it was intended to be effected, on account of a legal obstacle, but can be fully executed in a different way which is consistent with law, it must be permitted to operate in the latter mode. p. 163).

2. LANDLORD AND TENANT—*Contract of Owner Construed to Require Him to Cultivate Land for His Tenant.*

   A verbal, indefinite and thoroughly informal contract by which an owner of forest land, in consideration of the clearing and fencing of a portion thereof by the other party to the contract, agrees to cultivate it, when cleared, for a certain number of years and yield to such other one-half of the crops, creates a term of years in the party clearing and fencing the land and obligates the owner thereof to cultivate it as if he were the tenant of the other, and, in case of his failure to do so, the lessee may have the work done by others. (p. 163).

3.  SAME—*In Such Case the Lessee is a Tenant From Year to Year.*

    Being verbal and covering a longer term than can be validly created by a verbal contract, the lease is voidable, but the entry of the lessee and improvement of the land, treated as payment of rent, make him, holding the land for more than a year, a tenant from year to year. (p. 165).

4.  SAME—*Tenancy from Year to Year Can Only be Terminated By Giving the Statutory Notice.*

    A tenancy from year to year cannot be terminated against the will of either party, otherwise than by the giving of the statutory notice of intention to terminate at the end of a tenancy year. (p. 165).

5.  APPEAL AND ERROR—*Omission of Word from Oath to Jury Not Questioned Below is Unavailable on Appeal.*

    Omission from the oath administered to the jury in an action of unlawful entry and detainer, of the word "unlawfully," which should qualify the word "withholds," not affirmatively shown to have been specifically brought to the attention of the trial court is not available as a ground of error in the appellate court. (p. 165).

    (WILLIAMS, PRESIDENT, absent.)

Error to Circuit Court, Webster County.

Action of unlawful detainer by George Cooper Wilson against John Riffle and others. Judgment for defendants, and plaintiff brings error.

*Affirmed.*

*J. S. Cogar* and *W. S. Wysong,* for plaintiff in error.
*W. T. Talbott,* for defendants in error.

POFFENBARGER, JUDGE:   .

On this writ of error to a judgment for the defendant in an action of unlawful detainer, there is submitted to the court, for interpretation, a very peculiar contract. It can hardly be said to be one of a species for it is doubtful whether another one like it exists.

Though relating to real estate and extending over a period of at least four years, the agreement was verbal. Being the

owner of a tract of unimproved land, containing about forty acres, the plaintiff, Wilson, entered into a contract with the defendant, Riffle, by which the latter agreed to clear a portion of the tract, containing from twelve to fifteen acres, and put an eight-rail fence, six rails being used in each pannel of fence and two for props, all the way around it, using, for a part of the distance, an existing fence four rails high. In consideration of that service, the plaintiff was to cultivate the land and build a silo on it, and both parties were to gather the crops at maturity and share them equally, for a period of four years. In the year 1915, the defendant entered upon the land embraced in the contract and cut down the timber and brush. In the spring of the year 1916, he attempted to burn the land off, but found it too wet. Thereupon, the plaintiff extended the time of the clearing over another year. In the spring of 1917, Riffle made the ground ready for a crop, but not at as early a date as it should have been prepared. Owing to the delay in the preparation of the ground or some other reason not stated, the parties disagreed in June 1917, and the plaintiff gave notice that he would not perform his contract. Shortly afterwards, he was committed to an asylum for the insane in which he remained for a period of three months. At the end of that period, he went to his father's place under bond and remained there until he was discharged on July 24, 1918. In the meantime, Riffle had completed the clearing and built some if not all of the fence, and the plaintiff's sons cultivated the land in the year 1917, taking one-half of the crops to their home where it was used by the family. In 1918, Riffle permitted the sons of the plaintiff to cultivate about four acres of the land, and let Lloyd Wilson and Arthur Wilson, first cousins to the plaintiff, cultivate the residue thereof, and they were in possession and cultivating the entire tract in July 1919, when this action was instituted against them and John Riffle. The sub-letting to Lloyd and Arthur Wilson is specially complained of. The plaintiff says he would have been content, if Riffle had allowed his sons to continue the cultivation, but he admits Riffle objected to them on the ground of their alleged inability to cultivate the ground efficiently. On the

evidence adduced by the plaintiff, the case was submitted and a verdict for the defendants rendered by direction of the court.

As to the merits of the case, the plaintiff's contention is that Riffle was never in any sense a tenant of the land. He was simply employed to clear and fence it for Wilson, and then Wilson was to cultivate it and give him one-half of the crops, in consideration of the clearing and fencing. On the other hand, the contention of the defendants is that the agreement, properly interpreted, gave Riffle a term of four years in the land and bound the plaintiff, by personal covenant, to work the land and make it produce crops to be divided between them, and that his failure to perform that part of the agreement conferred upon Riffle right to have it cultivated by some one else, to enable him to get the benefit of his contract. In support of this construction, an admission of the plaintiff in his testimony, that, on his failure to cultivate, he supposed Riffle had the right to have it worked by some one else, is invoked. This admission, however, was in the nature of an opinion as to the meaning of the contract. The right claimed by Riffle was not put in as one of the terms of the contract, by the plaintiff, in his statement of it.

The relation of tenant and sub-tenant between the parties might be legally impossible by reason of the doctrine of merger. It is unnecessary, however, to enquire whether it would or not. There is no legal obstacle to the relation created by the interpretation put upon the contract by the defendants. It was perfectly competent for the plaintiff to make the defendant Riffle a tenant of the land he was to clear, and the liberty of contract which men have in this country would certainly permit Riffle as Wilson's tenant to employ Wilson to do any kind of work on his lease, notwithstanding Wilson's ownership of the land. If it was the intention of the parties to create the relation first above suggested, in respect of the plaintiff's land, and the law does not permit it, a well settled rule of interpretation carries their purpose into effect upon the other theory which the law does permit. "If a deed cannot operate in the manner intended by the parties, the judges will endeavor to construe it in such a way as that it shall operate in some other manner.

* * * * Upon this principle, it has been determined, that a deed which was intended to operate as a lease and release, but could not take effect in that manner, was good as a covenant to stand seized. Where a deed may inure in different ways, the person to whom it is made shall have his election which way to take it, and he may take it in that way as shall be most for his advantage." *Jackson* v. *Blodget*, 16 Johnson (N. Y.) 172. "Now, if this deed or its parts, are equally capable of two constructions—one, consistent with his having intended to do that which it was lawful for him to do—and one, consistent with his having intended to do that which it was unlawful for him to do—the former will be adopted." *Hancock* v. *Butler*, 21 Tex. 812. See also *Lynch* v. *Livingston*, 8 Barb. (N. Y.) 485; *Parker* v. *Nichols*, 7 Pick. (Mass.) 115; *Wallis* v. *Wallis*, 4 Mass. 125; *Barnes* v. *Haybarger*, 8 Jones L. (N. C.) 76.

The contract, as stated by the plaintiff, is thoroughly informal. While it is definite and certain as to the things agreed upon to be done, it is wholly silent as to the relation the parties were to sustain toward each other, and also as to the guaranties of performance given by each to the other. Riffle was wholly to perform his part of the contract, before any benefit thereof should inure to him. It is plain, however, that his reward, advantage or consideration was to be one-half of the crops to be raised on the land for four years. As he was to be relieved of the burden of cultivation and yet to take one-half of the crops, to be raised by the plaintiff, his situation was analogous to that of landlord to the plaintiff treated as a tenant. He was to have the beneficial use of the land subject to the deduction of a share of the crops for cultivation, just as a landlord would have. The promise of his share of the crops was the only consideration he had for the labor he should do upon the land. It is not even suggested ·in the evidence, that if Wilson failed to perform the labor of cultivation, he could substitute therefor for any agreed sum of money to be paid or be liable for the value of the labor, in lieu of performance. Riffle was required to look solely to the product of the land and to rely upon it. As to these vital matters, the contract does no more than indicate its purpose. To effectuate that purpose fully, it is neces-

sary to make Riffle a lessee of the land with a covenant on the part of Wilson to cultivate it and make it yield his reward for the improvements. After mature and careful consideration, we are of the opinion that this is the true construction of the contract, and that the intent of the parties so clearly arises from the terms of the contract and its declared purpose, that the question of interpretation is one for the court and not for the jury.

The lease thus informally made, being verbal and for more than one year, it is, of course, void under the statute of frauds, But, as the tenant had paid the rent by his labor done upon the land and had entered into possession, he was a tenant from year to year. *Coffman* v. *Sammons,* 76 W. Va. 13. As such, he was entitled to the statutory notice which was not given to him. Some sort of a verbal notice was given at some time, but that is not sufficient. To suffice, it had to be in writing and also to be certain and definite as to the time of termination. *Coffman* v. *Sammons,* cited; *Arbenz* v. *Exley, Watkins & Co.,* 57 W. Va., 580.

Having claimed damages for unlawful detention of the land, as well as the unlawful withholding, in the summons, the plaintiff objected to the oath administered to the jury, on the ground that it was not broad enough in its terms to include an inquiry as to the damages. The specific objection stated in the bill of exceptions is that the jury was not sworn to try "all matters in issue in this case." The bill of exceptions further says the oath was objected to "for other reasons." As the defendant did not unlawfully withhold the possession of the property, the other issue attempted to be raised has no foundation, of course. If, in such an action, damages for detention can be recovered, the oath was defective no doubt. But the error in excluding the issue as to damages from the oath, if any, was clearly harmless because there is no right of recovery of either possession or damages. Another criticism now made upon the oath is that it omits the word "unlawfully," which should have preceded the word "withholds." If this defect had been brought to the attention of the trial court, it is safe to assume it would have been corrected. Nothing in the bill of exceptions indi-

cates that attention was directed to it. No doubt the specific objection made was the subject of argument and contention which in all probability had a tendency to conceal from the court, as well as from counsel, the inadvertence in the administration of the oath or the recordation thereof. At any rate, it does not affirmatively appear that this objection was made in the court below. It is a highly technical one and we are clearly of the opinion that it ought not to be entertained here, in the absence of a showing that it was definitely pointed out and made the basis of an exception in the court below. We think this conclusion is well sustained by reason and authority. *Bank* v. *Lowther-Kaufman Oil & Coal Co.,* 66 W. Va. 505; *State* v. *Ice,* 34 W. Va. 244.

For the reasons stated, the judgment complained of will be affirmed.

*Affirmed.*