**James Renneth MARSTON, Plaintiff,**

v.

**E. I. du PONT de NEMOURS & COMPANY, INC., Defendant.**

Civ. A. No. 75–0020.

United States District Court,
W. D. Virginia,
Danville Division.

March 30, 1978.

A. David Hawkins, Overbey, Overbey & Hawkins, Rustburg, Va., for plaintiff.

David M. Moore, II, J. Donald Cowan, Jr., Smith, Moore, Smith, Schell & Hunter, Greensboro, N. C., for defendant.

## OPINION AND ORDER

GLEN M. WILLIAMS, District Judge.

The above-styled case is pending before this court on defendant's motion for judgment notwithstanding the verdict, or in the alternative, for a new trial pursuant to Rule 50(b) of the Federal Rules of Civil Procedure. Defendant sets forth the following grounds for judgment notwithstanding the verdict: (1) there was no evidence that plaintiff relied upon any affirmation or promise of defendant as required under Va.Code § 8.2–313 (1965); (2) plaintiff did not carry his burden of proof on the issue of damages because he produced evidence showing that unidentified individuals (not parties to this action) were entitled to some unknown portion of the amount prayed for, thereby permitting the jury to speculate on this issue. In addition to the two grounds just mentioned, defendant asserts three other grounds to support its motion for a new trial: (1) the verdict is contrary to law; (2) the verdict is contrary to the weight of the evidence; (3) the verdict of the jury as to damages is excessive and unreasonable under the evidence.

The facts of the case that are pertinent to these motions can be summarized as follows. While preparing his tobacco crop in 1974, plaintiff discovered that he needed more of a chemical called disyston. He called Camp Chemicals Corporation to order the disyston, but an employee there told him that they did not have as much in stock as he needed. The employee did, however, recommend a new product manufactured by defendant and called "Vydate L". The employee told plaintiff that this new chemical would control flea bugs and nematodes and was cheaper to use. Consequently, plaintiff ordered the "Vydate", and it was delivered to his farm. It was not until after the "Vydate" arrived at his farm that plaintiff actually read the label on the container. He testified, however, that if he had not been satisfied, he would have returned it to Camp Chemicals.

Plaintiff proceeded to use the "Vydate" in his transplant water on approximately 49.7 acres of his 52-acre tobacco crop. About two weeks after transplanting, he noticed that the tobacco that he had used "Vydate" on was not growing properly. He subsequently advised defendant that he thought "Vydate L" had damaged his tobacco crop. Defendant's representative, in addition to some other experts in tobacco, visited plaintiff's farm several times during the 1974 growing season in an attempt to determine the source of his problems.

After selling his crop, plaintiff filed this action alleging that defendant breached the express warranty on the "Vydate" label. The label stated that the chemical "Vydate L" was recommended for use in tobacco as a transplant water treatment. Plaintiff claimed damages to his tobacco crop in the amount of $75,000.00. A trial was held on February 21–24, 1978. The jury returned a verdict for plaintiff and awarded him $25,000.00 in damages.

The evidence indicated that plaintiff did not raise the 52 acres of tobacco by himself. Rather, he had several tenants or sharecroppers who worked with him. Plaintiff owned the land and the tobacco allotments, and he paid for the fertilizer and all the other expenses. After selling the tobacco, he divided up the profits according to whatever percentage each person was to receive. None of these individuals were made parties to the suit.

## EXPRESS WARRANTY

The basis of defendant's first ground for judgment notwithstanding the verdict or a

new trial is that Virginia Code Section 8.2–313 requires plaintiff to show that he relied upon any promise or affirmation made by defendant. Section 8.2–313 specifically states that "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty . . . ." The question to be resolved is whether this section requires a showing of actual reliance.

Courts have reached opposite conclusions on this issue of reliance. For example, the court in *Hagenbuch v. Snap-On Tools Corp.,* 339 F.Supp. 676 (D.N.H.1972), held that the plaintiff has the burden of showing that he relied on the defendant's representations of fact; whereas, the court in *Interco Inc. v. Randustrial Corp.,* Mo.App., 533 S.W.2d 257 (1976), decided that "no particular reliance on an express warranty is necessary." *Id.* at 262. In both cases, the plaintiff had read a catalogue description of a particular product, but the evidence failed to demonstrate that he had relied on the description in purchasing the product.

There does not appear to be any Virginia cases directly on this point. However, this court believes that both the official comment and the Virginia comment to Section 8.2–313 impart the proper interpretation of this section. The official comment specifically states that:

[i]n actual practice affirmations of fact made by the seller about the goods during a bargain are regarded as part of the description of those goods; *hence no particular reliance on such statements need be shown in order to weave them into the fabric of the agreement.* Rather, any fact which is to take such affirmations, once made, out of the agreement requires clear affirmative proof. (emphasis added).

The Virginia comment provides further elaboration by noting that Section 8.2–313(1)(b) might change the result in *Gillette v. Kelling Nut Co.,* 185 F.2d 294, 297–98 (4th Cir. 1950). In *Gillette,* the buyer acted upon an inspection made by its customer rather than the seller's description. Hence the court held that the buyer could not hold the seller liable for breach of an express warranty. The comment states that under Section 8.2–313(1)(b), an express warranty would have been created in *Gillette* if the description was "made part of the basis of the bargain."

■ In light of these comments, the court finds that reliance per se does not have to be proved by plaintiff in order to establish the existence of an express warranty.

## DAMAGES

Defendant's argument about damages arises out of the fact that the evidence showed that certain individuals who were not parties to the suit but who assisted plaintiff in raising the tobacco were entitled to a portion of the damages. But, plaintiff's evidence did not establish what portion he was entitled to and what portion belonged to these other individuals. Thus defendant argues that the jury was allowed to speculate on the amount of damages incurred by plaintiff.

■ There are innumerable cases discussing contracts to farm on shares. It is well settled that one can lease land, thereby creating the relationship of landlord and tenant, with rent being paid in a share of the crops raised. It is equally well settled that one can be employed to cultivate land, with his compensation being a share of the crops. *Clark v. Harry,* 182 Va. 410, 29 S.E.2d 231 (1944). In the latter situation, the employee is called a "sharecropper."[1]

■ This distinction between a tenant and a sharecropper gives rise to differences in their legal rights. A tenant has a possessory interest in the land; whereas, a sharecropper is like an employee and has no estate in the land. *Smith v. McNew,* Mo. App., 381 S.W.2d 369 (1964). Since a sharecropper has no possessory interest in the land, it has been held that he is not a necessary party in an action brought by a

1. *See* 21 Am.Jur.2d *Crops* § 35 et seq. (1965).

landowner to recover damages to a growing crop. *Comar Oil Co. v. Richter*, 127 Okl. 153, 260 P. 60 (1927). On the other hand, if the interests of both a landlord and his tenant are damaged, each has a cause of action but can recover only the damages to his own interest. *Edwards v. Solar Oil Corporation*, 177 Kan. 219, 277 P.2d 614 (1954).

Accordingly, if the previously mentioned individuals were sharecroppers, plaintiff was under no obligation to make them parties and did not have to prove what portion of the damages belonged to them. The evidence adduced at the trial concerning the relationship between plaintiff and these individuals was uncontradicted. Plaintiff testified that they worked as a family with everybody working on all the fields of tobacco. Plaintiff paid the expenses associated with raising the tobacco, and at the end of the season, he divided up the profits. Furthermore, plaintiff made all the decisions about the agricultural methods to be used, and there was not even a scintilla of evidence that he surrendered possession of his land.

These very factors led the court in *Comar, supra*, to hold that the plaintiff in that case was a sharecropper and not a tenant. In *Comar*, the sharecropper was hired to assist the landowner in planting and cultivating the crops, and his compensation was to be a share of the crops. The owner kept possession and control of the land and provided all the stock and equipment necessary to growing the crops.

Since the evidence in this case is almost identical to that in *Comar*, the court concludes that these unidentified individuals were not necessary parties to this case, and as a matter of fact, they did not even have a right to sue for any damage to the tobacco crop. 260 P. at 66. The jury was not allowed to speculate on the issue of damages because plaintiff was entitled to the full amount awarded. If any of his sharecroppers are entitled to a portion of the $25,000.00 pursuant to their sharecropper agreements, such is a matter outside the scope of this case.

*Conclusion*

For the reasons discussed, the court fails to find that these two grounds warrant either a judgment notwithstanding the verdict or a new trial. Defendant asserted three other grounds for a new trial, but after due consideration, the court finds that they likewise do not justify ordering a new trial. Accordingly, defendant's motion is denied.