MATTHEW AND FRANCINE SNYDER

AND THE

UPPER WEST FORK RIVER WATERSHED ASSOCIATION, INC.

*v.*

DAVID C. CALLAGHAN, *Director,*

*West Virginia Department Of Natural Resources*

(No. 15043)

Decided November 12, 1981.

*John C. Purbaugh* for petitioners.

*Chauncey H. Browning,* Attorney General, and *Ronald A. Shipley,* Assistant Attorney General, for respondent.

McGraw, Justice:

The petitioners, Matthew and Francine Snyder, claiming to be individual holders of riparian interests, and the Upper West Fork River Watershed Association, Inc., [hereinafter UWFRWA], an organization composed of similarly situated individuals and other interested persons, seek a writ of mandamus under the original jurisdiction of this Court to compel the respondent, the Director of the Department of Natural Resources, to afford them a hearing on the respondent's certification of upstream construction activity which involves the alteration and filling of the river bed of the West Fork River. The petitioners contend that the riparian interests they assert are constitutionally protected property interests within the meaning of article 3, section 10 of the Constitution of West Virginia, and that the deprivation of those interests by the State in approving upstream construction work entitles them to a hearing, as provided by Department of Natural Resources' regulations, for the purpose of considering the possible adverse effects of such construction. We find merit in the petitioners' arguments and we award the writ.

The facts of the case are essentially undisputed. On August 6, 1979, the United States Army Corps of Engineers requested a water quality certification from the State of West Virginia, pursuant to Section 401 of the

Clean Water Act, 33 U.S.C.A. § 1341 (1978), for construction work to be done in connection with the Stonewall Jackson Reservoir Project in Lewis County,[1] including the construction of a dam, three highway bridges, road relocations, and stream channelizing, which involve the filling and diversion of the waters of the West Fork River. Certification appears to be an assurance on the part of the State that the activity contemplated will comply with federal and state pollution control requirements and is a prerequisite to the issuance of a federal permit or license to perform construction activities, such as those contemplated by the Army Corps of Engineers, which will result in a discharge of material into the navigable waterways of the State. 33 U.S.C.A. § 1341(a) (1). The Department of Natural Resources initially granted the water quality certification by letter dated December 6, 1979, but upon request of UWFRWA, the certification was withdrawn on March 19, 1980, because the Department had not promulgated rules and regulations governing application, notice, hearings and administrative review for such requests as required by the federal statute. *Id.*

On March 21, 1980, the respondent issued notice by publication of his intention to make a decision on the Stonewall certification request and solicited comments and information on the impact of the construction activity on water quality. The Director filed temporary emergency regulations governing state water quality certification procedures in the Secretary of State's office on April 18, 1980. Final regulations were filed on July 15, 1980, to become effective August 14, 1980.

---

[1] This project was originally authorized by Congress in 1966 to provide flood control for the Lewis County area. River and Harbor Act of 1966, Pub.L. No. 89-789, § 203, 80 Stat. 1405, 1419 (1966). Land acquisition began in 1977 and approximately 60% of the land necessary for the 20,000 acre project has already been acquired. The State's official role in the project dates back to 1972, when the Legislature appropriated $300,000 for development of the Stonewall Jackson Lake. 1972 W.Va. Acts, ch.7. In March, 1977, Governor Rockefeller signed an agreement with the U.S. Army Corps of Engineers which provided for joint development of a recreational plan for the flood control project on a cost-sharing basis.

In response to the public notice of March 21, 1980, UWFRWA submitted to the Department of Natural Resources substantive comments and information on the environmental effects of the proposed construction and suggested control measures. UWFRWA also protested the inadequacy of the comment period and of the regulations and requested both a public hearing and an evidentiary hearing on the issues involved. The Snyders, apparently relying upon UWFRWA, did not personally submit comments in response to the public notice. After consideration of the comments received on the proposed Stonewall water quality certification, the respondent, by letter dated July 21, 1980, reissued the proposed state certification, to become final in thirty days unless appealed pursuant to provisions of the Department's temporary emergency regulations. On July 25, 1980, the respondent notified UWFRWA that its request for a public hearing had been denied and responded to its comments.

On August 20, 1980, the petitioners filed an administrative appeal from the issuance of the proposed water quality certification with the Department pursuant to §6.06 of the Department's regulations. Section 6.06 provides, in material part:

> Any person entitled to a hearing because of an infringement upon an interest protected by the State Constitution Article 3, Section 10 may request a hearing within 30 days of the Department's issuance of the proposed certification.

*Regulations for Procedures Governing the Director's Certification of § 404 and § 10 Permits,* West Virginia Administrative Regulations, Department of Natural Resources, Chapter 20-1 Series XIV, §6.06(a)(1979).

The petition for appeal asserted that Matthew and Francine Snyder were in possession of and used farm land located on the bank of the West Fork River approximately one-half mile downstream from one of the proposed construction sites and that UWFRWA was a non-profit corporation whose members lived on, used and owned land and

water rights on the West Fork River located downstream from work sites which were the subject of the state certification. The property interests asserted by the petitioners as being affected by the issuance of the proposed certification were in the reasonable use of their land and the river as riparian owners and users. The petition also assigned legal and factual errors and requested a due process hearing pursuant to §6.06 of the Department regulations.

On August 25, 1980, the respondent notified the Army Corps of Engineers of the suspension of the proposed state certification pending his determination as to whether the petitioners were entitled to a hearing. On October 9, 1980, the respondent notified the Army Corps of Engineers that the request for a hearing had been denied and that, consequently, the proposed certification issued in July had become final and in effect. By letter dated October 10, 1980, the respondent notified the petitioners of his decision, stating that the property interests they claimed in their petition for appeal were not so directly affected by the issuance of the water quality certification as to entitle them to a hearing under article 3, section 10 of the state constitution or under the Department's regulations. Counsel for the petitioners immediately advised the respondent's counsel of the petitioners' intent to compel the respondent to hold a hearing and a petition for a writ of mandamus was filed in this Court on October 31, 1980.

The petitioners contended that they were entitled to a hearing under §6.06 of the Department's regulations because the riparian rights they assert are constitutionally protected property interests which are infringed by the issuance of the water quality certification. The respondent maintains that the interests asserted by the petitioners do not constitute property being taken by the State so as to require the Department to hold a §6.06 hearing. The respondent also contends that the petitioners herein lack standing to petition this Court for a writ of mandamus and that the petitioners have an adequate remedy at law. As the respondent's challenge the petitioners' standing to maintain this action in mandamus is dependent upon our

determination of the nature of the rights asserted by the petitioners, we will withhold our ruling on the standing issue raised by the respondent until we have resolved the substantive issue presented.

Article 3, section 10 of the state constitution provides:

> No person shall be deprived of life, liberty, or property, without due process of law, and the judgment of his peers.

The respondent does not contest that a riparian owner is vested with a property interest which is protected by this provision. He maintains, however, that the issuance of the water quality certification does not constitute an infringement upon the property interests asserted by the petitioners because the state action does not directly affect them. In support of this contention, the respondent relies heavily upon our decision in *McGrady v. Callaghan*, ____ W.Va. ____, 244 S.E.2d 793 (1978).

In *McGrady*, owners of property located adjacent to a proposed surface mining site claimed that they were entitled to an administrative hearing under article 3, section 10 of the state constitution prior to the issuance of the surface mining permit by the Department of Natural Resources. Notice of the application for the permit had been published by the Director even though the application did not at that time contain all the information required by statute. In response to the notice, the landowners filed protests with the Department alleging possible damage to their property as a result of blasting, possible damage to wells and wildlife and concern for aesthetic values and pollution. The Department informed the landowners by letter that their protests would be considered upon completion of the application, but did not notify them when the application was completed or publish a notice of the completed application. The landowners did not learn of the completed application until after the Department had issued the surface mining permit.

In rejecting the landowners' claim that they had a constitutional right to an administrative hearing before

the issuance of the permit, the majority in *McGrady* noted that the permit did not authorize surface mining of the landowners' property and did not give the permittee any right to take or to affect adversely any property not included in the permit. The Court concluded that because the property right the landowners were seeking to protect was not directly affected by the state action in issuing the surface mining permit, but rather presented only a possibility that their property could be affected indirectly by the rights granted under the permit, the landowners were not in a position to assert that the State was taking their property without due process of law and were, therefore, not entitled to a hearing prior to the issuance of the surface mining permit.

The respondent asserts that *McGrady* is directly on point. He notes that none of the petitioners own the property upon which the proposed construction will take place. The Snyders, he maintains, do not even claim to have an interest in property located adjacent to the construction sites. The respondent argues that since the water quality certification issued by the Department does not give the Army Corps of Engineers any right to perform any construction activity upon the petitioners' property, the State's action in issuing the certification does not directly affect the asserted property interests of the petitioners so as to amount to a taking of property by the State and to entitle the petitioners to a due process hearing.

We think the respondents' argument ignores the nature of the property right asserted by the petitioners and the scope of the state action in this case. The riparian owner has a property interest in the flow of a natural watercourse through or adjacent to his property. *Halltown Paperboard Co. v. C.L. Robinson Corp.*, 150 W.Va. 624, 148 S.E.2d 721 (1966); *McCausland v. Jarrell*, 136 W.Va. 569, 68 S.E.2d 729 (1951); *Roberts v. Martin*, 72 W.Va. 92, 77 S.E. 535 (1913).

> The right of enjoying this flow without disturbance, interference, or material dimunition by any

other proprietor is a natural right, and is an incident of property in the land, like the right the proprietor has to enjoy the soil itself without molestation from his neighbors. The right of property is in the right to use the flow, and not in the specific water.

*Gaston v. Mace,* 33 W.Va. 14, 23, 10 S.E. 60, 63 (1889). The riparian owner's right is to have the water pass his land in its natural course. *Roberts v. Martin, supra.* "Each proprietor may make any use of the water flowing over his premises which does not essentially or materially diminish the quantity, corrupt the quality or detain it so as to deprive other proprietors or the public of a fair and reasonable participation in its benefits." *Gaston v. Mace, supra.* The obstruction or diversion of the natural watercourse or the introduction into it of sediment, sludge, refuse or other materials which corrupt the quality of the water by upper riparian owners or users constitutes an infringement of the lower riparian owner's property right, which may be enjoined or give rise to a cause of action for damages. *See Halltown Paperboard Co. v. C. L. Robinson Corp., supra; McCausland v. Jarrell, supra; International Shoe Co. v. Heatwole,* 126 W.Va. 888, 30 S.E.2d 537 (1944); *Roberts v. Martin, supra; Gaston v. Mace, supra.*

It is apparent to us that the nature of the property rights asserted by the petitioners and the extent to which they are affected by the state action in this case differ substantially from the situation presented in *McGrady, supra.* Even a cursory reading of the publication notice issued by the respondent of the proposed water quality certification on March 21, 1980, reveals that the request for certification was made because the Army Corps of Engineers proposed "to place fill material into the waters of the United States." It is stated in the notice that fill materials, consisting of concrete and clean unclassified fill, "will result in approximately 9,300 feet of presently undisturbed river channels being either completely or partially filled."

The water quality certification the Department is required to issue as a prerequisite to the proposed con-

struction activity not only permits the Army Corps of Engineers to begin construction on property owned by persons or entities not parties to this action; it also specifically authorizes as an incident of that the introduction of foreign material into the watercourse in which the petitioners here asserts a property interest.[2] The State not only accedes to the request to modify the construction sites; it yields to an upper riparian user the power to influence or to modify the property right of the petitioners in the natural flow and the integrity of the watercourse.

The distinction between *McGrady, supra,* and this case is profound. In *McGrady,* the State authorized the surface mining permittee to use his own property for a certain purpose. The permit itself did not authorize the permittee to interfere with the property of others. Any infringement of the asserted property interests of the abutting landowners would have been the direct result of the manner in which the permittee used his own property and not of the issuance of the permit by the State. Here, however, the State's water quality certification itself grants the permittee, the Army Corps of Engineers, the right to interfere with the watercourse in which the petitioners claim a property interest. The infringement upon the asserted property rights of the petitioners is the direct result of the State's action and is not a possibility dependent upon some improper activity on the part of the permittee. We recognized this distinction in *Shobe v. Latimer,* 162 W.Va. 779, 253 S.E.2d 54 (1979), where we held that a riparian

---

[2] The State disputes the petitioners' characterization of the issuance of the certification as "approval" by the State of the proposed construction. The State contends that certification is not an approval but rather an "assurance" that the discharge will comply with federal and state requirements. Section 401 of the Clean Water Act requires the State to "either certify, deny or waive certification that the proposed activity will comply with ... the Federal Clean Water Act and other appropriate requirements of State law." 33 U.S.C.A. § 1341. Whether the certification is an "approval" or an "assurance" is irrelevant for our purposes. State certification or waiver of certification is a prerequisite to the issuance of a federal permit license under the federal statute, 33 U.S.C.A. § 1341(a) (1), and action of the State taken thereupon constitutes state action for due process purposes.

owner had alleged a property interest in a watercourse which was "directly in jeopardy" as a result of a state proposal to divert water from its natural course.

We conclude and hold, therefore, that when the State authorizes the introduction of foreign material into the flow of a natural watercourse which passes through or past the land of a lower riparian owner, such state action directly affects the interest of the lower riparian owner in the watercourse and constitutes an infringement of a property interest for purposes of article 3, section 10 of the state constitution. Section 6.06 of the applicable regulations affords a hearing to any person claiming an infringement of a right or interest protected by article 3, section 10. The request for the hearing follows the issuance of the proposed certification and is in nature an administrative appeal from Department action which affects the rights guaranteed appellants under the stated constitutional provision.[3] The language of the section makes it clear that the Director's duty to afford such persons a hearing is mandatory.[4] The respondent is bound by the validly promulgated rules and regulations of the Department and has a legal duty to afford a hearing to persons whose riparian property interests are directly affected by the Department's certification of upstream construction work such as that authorized here.

We dispose of the underlying substantive issue by determining that a riparian owner who claims to be injured as a result of the State's approval of upstream construction work which involves the introduction of foreign material into the watercourse has asserted a property interest which is directly affected by the state action so as to constitute an infringement of that property right and to

---

[3] Section 6.06(d) designates the aggrieved party as "Appellant" and the Department as "Appellee".

[4] Section 6.06(c) reads in material part:

The Director, or his designated appointee acting as a hearing examiner, *shall* hold the hearing within 60 days at a mutually decided time. . . . (Emphasis added).

Compare this section to § 6.05(a), providing for a public hearing before the issuance of the proposed certification "within the discretion of the Director."

entitle the holder of riparian rights to a due process hearing under the Department's regulations. We now turn to the respondent's arguments concerning the procedural issue of standing.

The respondent maintains that the petitioners herein lack standing to compel by mandamus the holding of a §6.06 hearing. The question of standing to sue is whether the litigant has alleged such a personal stake in the outcome of the lawsuit so as to present the court with a justiciable controversy warranting judicial resolution of the dispute. *Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *Sierra Club v. Morton,* 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972). In order to have standing to sue, a party must allege an injury in fact, either economic or otherwise, which is the result of the challenged action and show that the interest he seeks to protect by way of the institution of legal proceedings is arguably within the zone of interests protected by the statute, regulation or constitutional guarantee which is the basis for the lawsuit. *Shobe v. Latimer, supra.*

The injury alleged by the petitioners is the refusal of the respondent to afford them the §6.06 hearing to which they assert they were entitled. The interest they seek to protect in mandamus is their right to that hearing which is predicated upon the riparian interests they claim. The respondent maintains, however, that petitioners Matthew and Francine Snyder are not in fact riparian owners and for that reason have shown no interest or injury which would entitle them to a §6.06 hearing. Thus, he argues, they have no standing to seek a writ of mandamus.

Matthew and Francine Snyder assert by verified petition that they are in possession of, live on, farm and use a 135-acre tract of land located on the West Fork River approximately one-half mile downstream from one of the proposed construction sites. They assert that at the time the request for a hearing was denied, this tract was owned in fee by Matthew Snyder's parents, George and Mildred Snyder.

The petitioners allege that they were partners with the fee owners in certain business enterprises conducted upon the tract of land and that they compensated the fee owners for the use of the land by payments out of the proceeds of various enterprises and by in-kind payments of beef and other agricultural products. The petitioners assert that they used the property to pasture cattle, to cultivate and harvest an eight-acre stand of spruce and pine, to cultivate vegetables and to trap muskrat and mink, although they do not state in which of these activities, if any, they are partners with the fee owners. The petitioners depend upon the river for irrigation, watering of livestock and trapping. In their brief, the petitioners claim that they are tenants of the fee owners and therefore have a protected estate in the riparian rights annexed to the soil.

The respondent does not contest that one who is in possession and control of land as a tenant has an estate or property interest in the land and may enjoy, assert and protect all the rights incidental to the ownership of the land, including riparian rights, not reserved by the landlord. *See Wood County Petroleum Co. v. Transportation Co.*, 28 W.Va. 210 (1886). However, the respondent asserts that the relationship between the petitioners and the fee owners was not that of landlord and tenant, but was more akin to the master and servant relationship of a sharecropper in which the petitioners are employed to cultivate the land in return for a share of the crops and acquire no property interest in the land itself. *See Marston v. E.I. Dupont de Nemours & Co.*, 448 F. Supp. 172 (W.D.Va. 1978); *vacated and remanded,* 580 F.2d 1048 (1978); *Clark v. Harry,* 182 Va. 410, 29 S.E.2d 231 (1944). This argument is not well-founded.

The theory of "cropper" or "halfer" law on which the respondent relies is sanctioned in states such as Virginia, North Carolina and South Carolina, *see, e.g., Clark v. Harry, supra; Denton v. Strickland,* 48 N.C. (3 Jones) 61 (1855); *J. W. Green Co. v. Turbeville,* 263 S.C. 456, 210 S.E.2d 743 (1974) but is not favored in this jurisdiction. *See Wilson v. Riffle,* 87 W.Va. 160, 104 S.E. 285 (1920). Generally, the

law will imply a tenancy whenever there is ownership of the land on one hand and occupation by permission on the other. *Hanks v. Price*, 73 Va. (32 Gratt.) 107 (1879). The relation of landlord and tenant may be proved by very slight evidence, including the payment of rent, *Virginia Mining & Import Co. v. Hoover*, 82 Va. 449, 4 S.E. 689 (1886), but neither actual payment of rent nor an express contract to pay it is essential to the existence of a tenancy. *Hanks v. Price, supra.* Nor is it necessary that rent be paid in money; if it is paid in kind, it is rent in contemplation of law. *Harvey Coal & Coke Co. v. Dillon*, 59 W.Va. 605, 53 S.E. 928 (1905).

It appears to us that these petitioners have alleged sufficient facts to establish an interest arguably within the zone of interest protected by §6.06 of the Department's regulations. While it is true that further factual development might perhaps clarify the issue of the relationship of these petitioners with the fee owners, we do not think that such additional facts are necessary for determining the question of whether the petitioners have standing to seek a writ of mandamus to compel the respondent to hold a hearing. The petitioners allege sufficient facts to indicate that they have a legally protected interest, a tenancy, in the riparian rights they claim which would entitle them to a hearing under the Department's rules and regulations. The respondent produces no evidence or assertions to dispute those allegations, but merely disputes the petitioners' characterization of the facts. In view of the fact that this jurisdiction does not favor the "cropper" or "halfer" relationship and that there has been no proceeding below thus far in which further evidence of the relationship of the petitioners to the fee owners could be adduced, we must conclude that the petitioners allege a sufficient injury and interest in fact to confer upon them standing to maintain this action in mandamus.[5]

---

[5] The respondent also contends that the case has become moot with respect to the petitioners Matthew and Francine Snyder because the land in which they claim riparian interests is now owned by the United States government. It affirmatively appears from the exhibits and affidavits of the parties that on October 23, 1980, the Secretary of

The respondent's challenge to the standing of petitioner UWFRWA to see a writ of mandamus rests on other grounds. The respondent asserts that UWFRWA claims no direct interest in any of the property on the West Fork River which would be harmed by the proposed state action, but merely seeks to assert the rights of its members. He argues that because the only interests alleged by the petitioner which are directly affected by state action are those of its members, the members of the organization must bring an action in mandamus as individuals.

UWFRWA alleges in the petition that it is a non-profit West Virginia corporation with approximately fifteen hundred members, including the petitioners Matthew and Francine Snyder, about sixty percent of whom own real property in the area of the Stonewall Jackson Reservoir Project. UWFRWA asserts that members live on, use and own land and water rights located at and downstream from the proposed construction sites, and that the organization itself is the record owner of a small tract of land which is located in the area of and directly affected by the proposed construction. UWFRWA asserts that its mem-

the Army filed a Declaration of Taking of several tracts of land owned in fee by George and Mildred Snyder, including the river tract in the possession of the petitioners, in the United States District Court for the Northern District of West Virginia. The federal court issued an order for delivery of possession of that tract by November 30, 1980. George and Mildred Snyder did not receive notice of the proceedings and the order for delivery of possession until November 10, 1980, five days after this Court issued a rule to show cause in this case. While we agree that once a final determination has been made in the federal courts as to whether the United States government is entitled to take the petitioners' property by eminent domain, the property rights of the petitioners are extinguished, we must note that George and Mildred Snyder are contesting the right of the Army Corps of Engineers to take the land on procedural and substantive grounds. The petitioners leave us with the impression that the sole reason for the taking of the Snyders' land was to foreclose the petitioners' right to a hearing under the Department regulations and that such action constitutes a "vindictive taking." We conclude that pending the outcome of the federal litigation, the case is not moot insofar as the petitioners' entitlement to a hearing under the Department regulations. No question of mootness is raised with respect to petitioner UWFRWA.

bers' use of their land and/or water is identical to those uses alleged by the petitioners Matthew and Francine Snyder, including agricultural enterprises and raising cattle. The petitioner asserts that its members' reasonable use of their land and the river will be severely curtailed or precluded by the State's proposed certification of the project construction.

It is clear from the allegations in the petition that UWFRWA alleges ownership of land in the area of the Stonewall Jackson project which will be directly affected by the proposed construction work. UWFRWA does not allege, however, that the land it owns is riparian property. If such property is riparian in nature, the organization obviously has standing under the principles enuniciated in this opinion to maintain this action in its own right. We think, however, that regardless of the standing of the association to sue in its own right, it has standing to sue solely as the representative of its members.

Traditionally, courts have been reluctant to allow persons to claim standing to vindicate the rights of a third party on the grounds that third parties are generally the most effective advocates of their own rights and that such litigation will result in an unnecessary adjudication of rights which the holder either does not wish to assert or will be able to enjoy regardless of the outcome of the case. *Singleton v. Wulff*, 428 U.S. 106, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976). An exception to the general rule that one may not maintain an action based upon the assertion of the rights of third persons has been made, however, in certain instances where an association or organization seeks to vindicate the rights of its individual members. In *Warth v. Selden, supra,* the Supreme Court held:

> Even in the absence of injury to itself, an association may have standing solely as the representative of its members .... The association must allege that its members, or anyone of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the mem-

bers themselves brought suit .... As long as this can be established, and so long as the nature of the claim and of the relief sought does not make the individual participation of each injured party indispensable to proper resolution of the cause, the association may be an appropriate representative of its members, entitled to invoke the court's jurisdiction. 422 U.S. at 511, 95 S.Ct. at 2211-2212.

In *Hunt v. Washington State Apple Advertising Comm'n,* 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977), the Court reiterated this principle and expanded the criteria upon which the issue of the standing of an association to sue on behalf of its members hinges. In *Hunt,* the Court stated that an association which has suffered no injury itself, but whose members have been injured as a result of the challenged action, may have standing to sue solely as the representative of its members when:

(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. 432 U.S. at 343, 97 S.Ct. at 2441.

Clearly this exception is consistent with the underlying justifications of the traditional standing rule. The requirement that the organization meet the above-stated criteria insures that the case will present a justiciable controversy and that the organization will fairly and adequately represent the interests of its members. Moreover, no constructive purpose is served from a procedural standpoint by requiring the members of an organization which fulfills these requirements to maintain individual suits. "One presumes that an association is typically the embodiment of a community of interest, the form assumed by some conglomerative principle or goal." *Salton City Area Property Owners Association v. M. Penn Phillips Co.,* 75 Cal. App. 3d 184, 190, 141 Cal. Rptr. 895, 899 (1977). Permitting the association or organization to sue to protect the common interests of its members avoids multiplicity of

suits by similarly situated plaintiffs involving the same or similar causes of action and provides an efficient and expeditious method of adjudicating disputes. *See Massachusetts Association of Independent Insurance Agents & Brokers, Inc. v. Comm'r of Insurance*, 373 Mass. 290, 367 N.E.2d 796 (1977); *White Lake Improvement Association v. City of Whitehall*, 22 Mich. App. 262, 177 N.W.2d 473 (1970); *Crescent Park Tenants Association v. Realty Equities Corp. of New York*, 58 N.J. 98, 275 A.2d 433 (1971); *Save A Valuable Environment (S.A.V.E.) v. City of Bothell*, 89 Wash. 2d 862, 576 P.2d 401 (1978).

Applying these principles to the case at hand, it appears to us that petitioner UWFRWA satisfies all of the prerequisites to have standing to maintain this action to compel the respondent to hold a due process hearing on behalf of its members. First, the petitioner alleges that its members live on, use and own land and water rights located at and downstream from the proposed construction sites. The individual riparian-holder members would be subjected to whatever harmful effects might result from the introduction of foreign material into the river. Under the principles previously enunciated in this opinion, their constitutionally protected property interest in the use of the watercourse would be directly affected by the proposed state action and they, as individuals, would be entitled to maintain an action in mandamus to compel the Director to afford them a hearing under §6.06.[6] The petitioner UWFRWA has thus met the first of the criteria for determining an association's standing to sue as a representative of its members.

---

[6] Other jurisdictions have held that associations alleging infringement of the riparian interests of their members have met the requirement of showing that its members would have standing to sue in their own right. *Ramsey River Road Property Owners Ass'n Inc.*, 387 So.2d 1194 (La. App. 1980), *aff'd* 396 So.2d 873 (La. 1981); *White Lake Improvement Ass'n v. City of Whitehall*, 22 Mich. App. 262, 177 N.W.2d 473 (1970). *See also Residents of Beverly Glen, Inc. v. City of Los Angeles*, 34 Cal. App. 3d 117, 109 Cal. Rptr. 724 (1973); *Loveless v. Yantis*, 82 Wash. 2d 754, 513 P.2d 1023 (1973).

Second, the stated purpose of the petitioner association is "to encourage and promote a small multi-purpose watershed project on the tributaries of the West Fork River as an alternative to the proposed Stonewall Jackson Lake project." (Petitioner's Exhibit 6). The interests the association seeks to protect are the rights of its members, under the regulations of the Department of Natural Resources, to voice their concern at the alleged harmful effects of the proposed construction on their property interests and to advocate alternative methods of flood control which would be less detrimental to the interests of the members. Clearly the purposes of the association and the interests of its members are sufficiently related so as to insure that the association will adequately and fairly represent the rights of its members.

Finally, it does not appear that the nature of the claim or of the relief sought requires the participation of the individual members of the association in this action.

> [W]hether an association has standing to invoke the court's remedial powers on behalf of its members depends in substantial measure on the nature of the relief sought. If in a proper case the association seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured. *Warth v. Selden, supra,* 422 U.S. at 515, 95 S.Ct. at 2213.

In *Warth,* the plaintiff association was seeking damages on behalf of its members. The Court held:

> The damages claims are not common to the entire membership, nor shared by all in equal degree. To the contrary, whatever injury may have been suffered is peculiar to the individual member concerned, and both the fact and extent of injury would require individualized proof. Thus, to obtain relief in damages, each member of [the association] who claims injury as a result of the respondent's practices must be a party to the suit, and [the association] has no standing to claim

damages on his behalf. *Id.* at 515-516, 95 S.Ct. at 2214.

This case does not present the sort of claim for relief present in *Warth.* The petitioner seeks prospective relief in the form of mandamus to secure a hearing on behalf of its members. Such relief, if granted, will most surely inure to the benefit of those actually injured. Moreover, the claim of the petitioner association does not require individualized proof. Each individual member of the association who would challenge the respondent's denial of a hearing must allege the same facts in order to establish his or her entitlement to the writ of mandamus. Indeed, requiring each injured member of the association to seek relief as an individual would not only inundate this Court with numerous petitions for a writ of mandamus upon identical grounds, but, should the writs be granted, would also require the Department to hold a hearing in every case, needlessly burdening the administrative process with repetitious claims. Since the association appears to be able to adequately and fairly represent the interests of its members in a case which presents a justiciable controversy, and as there is no public policy reason for prohibiting such representation by the association, we conclude that petitioner UWFRWA has standing to maintain this action in mandamus on behalf of its membership to compel the respondent to hold a hearing as provided in the Department's rules.

The only issue remaining for our determination is whether the petitioners are entitled to the writ prayed for. The rule in this jurisdiction as to when mandamus will issue was reiterated in syllabus point 2 of *McGrady v. Callaghan, supra.*

> "A writ of mandamus will not issue unless three elements coexist—(1) a clear legal right in the petitioners to the relief sought; (2) a legal duty on the part of the respondent to do the thing which the petitoner seeks to compel; and (3) the absence of another adequate remedy." Point 2, Syllabus *State ex rel. Kucera v. City of Wheeling,* 153 W.Va. 538, 170 S.E.2d 367 (1969).

The petitioners have already shown their clear legal right, as holders of riparian interests, to the §6.06 hearing which they seek to compel. The respondent has a legal duty by the language of the applicable regulations themselves to afford the petitioners such a hearing. The only question remaining is whether the petitioners had another adequate remedy at law in the form of an appeal to the circuit court.

W. Va. Code § 29-5-4 (1980 Replacement Vol.) provides for judicial review of administrative orders in circuit court. The remedy is not exclusive, however, and the statute specifically provides that other means of review or relief are not precluded.[7] The existence of another remedy will not preclude resort to mandamus for relief where such other remedy is inadequate, or is not equally beneficial, convenient and effective. *State ex rel. Smoleski v. County Court,* 153 W.Va. 307, 168 S.E.2d 521 (1969); *State ex rel. Bronaugh v. City of Parkersburg,* 148 W.Va. 568, 136 S.E.2d 783 (1964); *State ex rel. Vance v. Arthur,* 142 W.Va. 737, 98 S.E.2d 418 (1957). We think that the appeal provided by W. Va. Code § 29A-5-4 is not an adequate remedy at law sufficient to preclude the petitioners' resort to mandamus. The respondent here refused to perform a nondiscretionary duty imposed upon him by the regulations of his own agency under a misapprehension of the law. We have frequently restated the rule that an administrative body must abide by the remedies and procedures it properly establishes to conduct its affairs. Syl. pt. 1, *State ex rel. Wilson v. Truby,* _____ W.Va. _____, 281 S.E.2d 231 (1981); *State ex rel. Hawkins v. Tyler County Board of Education,* _____ W.Va. _____, 275 S.E.2d 968 (1980); *Trimboli v. Board of Education,* 163 W.Va. 1, 254 S.E.2d 561 (1979); *Powell v. Brown,* 160 W.Va. 723, 238 S.E.2d 220 (1977). Requiring the petitioners to seek judicial review in the circuit court

---

[7] W. Va. Code § 29A-5-4:

(a) Any party adversely affected by a final order or decision in a contested case is entitled to judicial review thereof under this chapter, *but nothing in this chapter shall be deemed to prevent other means of review, redress or relief provided by law.* (Emphasis added.)

would only result in undue delay in the adjudication by this Court of the issues presented. It is in such circumstances that this Court has recognized a trend to enlarge the scope of mandamus to permit effective and adequate relief. *Walls v. Miller,* ___ W.Va. ___, 251 S.E.2d 491 (1979).

Accordingly we conclude that the petitioners are entitled to the relief prayed for and a writ of mandamus will issue to compel the respondent, the Director of the Department of Natural Resources, to hold a hearing pursuant to section 6.06 of the Department's *Regulations for Procedures Governing the Director's Certification of §404 and §10 Permits* in accordance with the principles enunciated in this opinion.

*Writ awarded.*