**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**In Re: J.L. & J.L.**

**No. 15-0199** (Cabell County 13-JA-218 & 13-JA-219)

**FILED**

October 20, 2015

**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

**MEMORANDUM DECISION**

Pro se Petitioner Mother A.S. appeals the Circuit Court of Cabell County's February 9, 2015, order setting each parents' child support obligation at $0 per month and denying her request to be designated primary residential parent to nine-year-old J.L.-1 and seven-year-old J.L.-2.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response. The guardian ad litem, Noel M. Olivero, filed a response in support of the circuit court's order. Petitioner filed a reply. On appeal, petitioner raises eight assignments of error. We will discuss each assignment of error seriatim.[2]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In December of 2013, the DHHR filed an abuse and neglect petition against petitioner alleging that, while the children were present and crying, she was videotaped "screaming, destroying the family home, threatening to kill herself and the children, stating she no longer wanted the children, stomping on a kitten, and speeding in and out of the driveway." According to the DHHR, petitioner stated that she would kill the children to prevent the children's father, R.L., from gaining custody of them. R.L. and J.H., petitioner's then-husband, were also named in the petition, although it appears no allegations were made against them.

---

[1]Because the children share the same initials, we have distinguished them using numbers 1 and 2 throughout this memorandum decision. The circuit court case numbers also serve to distinguish each child.

[2]We note that West Virginia Code §§ 49-1-1 through 49-11-10 were repealed and recodified during the 2015 Regular Session of the West Virginia Legislature. The new enactment, West Virginia Code §§ 49-1-101 through 49-7-304, has minor stylistic changes and became effective ninety days after the February 19, 2015, approval date. In this memorandum decision, we apply the statutes as they existed during the pendency of the proceedings below.

In January of 2014, the circuit court held an adjudicatory hearing. During that hearing, petitioner stipulated that she emotionally abused the children, had a mental health condition, and required mental health treatment. Thereafter, the circuit court found that petitioner had neglected the children, but granted her a six-month, post-adjudicatory improvement period. Further, the circuit court ordered petitioner to pay child support in the amount of $50 per month. Soon thereafter, a family case plan was filed, which required petitioner to participate in a parental fitness evaluation and follow the recommendations thereof; attend all mental health treatment as directed by the Prestera Center; continue in her treatment at Midland Behavioral Health; take all prescribed medications; demonstrate that she could control her anger; demonstrate that she was no longer a danger to herself or others; and maintain stable housing and employment.

Between March and July of 2014, the circuit court held three review hearings of petitioner's post-adjudicatory improvement period. During that time, the circuit court extended her post-adjudicatory improvement period. In August of 2014, the circuit court held a final review hearing of her post-adjudicatory improvement period. After hearing the evidence presented, the circuit court reunified the children with petitioner under a shared parenting plan that split parenting time between petitioner and R.L. By order entered on August 20, 2014, the circuit court adopted that shared parenting plan under which petitioner and R.L. exercised parenting time on an alternating weekly basis. However, the circuit court designated R.L. as the children's primary residential parent. The circuit court also ordered that R.L. provide the children with medical insurance and pay the children's uninsured medical expenses; that the parties communicate only by text message and only when necessary; and that each party inform the other of any planned activity that may interfere with the shared parenting plan. Given the resolution of the abuse and neglect issues and having achieved permanency for the children, the circuit court dismissed the abuse and neglect action from its active docket. On September 11, 2014, the circuit court entered an amended final order from the August 14, 2014, hearing, which did not change any substantive findings or conclusions at issue herein.[3]

In December of 2014, petitioner filed two pro se petitions with the clerk of the circuit court—a petition for contempt and a petition for modification of the parenting plan and child support, respectively. In her contempt petition, petitioner alleged more than twenty grounds against R.L., including her allegations that he provided her with only the front page of the medical insurance information; failed to provide her with one of the children's medications, football pads, and "folder"; did not inform her of the children's doctor's appointments or sports activities that interrupted her parenting time; refused to share the children's white game shoes; and failed to prevent his then-current wife to "stay out of things." In her modification petition, petitioner alleged that the children had a lice problem for "near [three] years," and, due to that continuing condition, petitioner requested that the circuit court prohibit R.L. from exercising parenting time with the children until the lice issue was resolved and then only to allow him visitation every other weekend.

The next day, R.L. filed a pro se cross-petition for contempt against petitioner. In his cross-petition, R.L. argued that petitioner refused to return the children to him, pursuant to the

_____

[3]We note that the amended order was incorrectly dated September 11, 2015. It is clear from the record on appeal that the amended order was filed on September 11, 2014.

parenting plan, on Thanksgiving and for a period in December of 2014; that she owed $978.81 in back child support; and that she texted excessively and generally harassed him.

On February 6, 2015, the circuit court held a hearing on the parties' pro se petitions for contempt and modification of the parenting plan and child support.[4] Petitioner and R.L. appeared pro se. Following the hearing, by final order entered on February 9, 2015, the circuit court determined that the family court had no jurisdiction to rule on issues of child support and child custody because the circuit court obtained that jurisdiction upon the filing of the underlying abuse and neglect action. In its order, the circuit court concluded that child support for both parties should be set at $0 and denied petitioner's motion to be designated primary residential parent. However, the circuit court found that petitioner's petitions were not verified and that it would not address the remaining issues raised by the parties. It is from this order that petitioner now appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner raises eight assignments of error. Four of those assignments of error directly relate to her prior abuse and neglect action.[5] We have explained that "[a] court of limited

---

[4]It appears from the record before us that neither the guardian nor the DHHR were provided notice of the pro se petitions or the February 6, 2015, hearing and did not participate therein.

[5]Petitioner's four assignments of error directly related to her dismissed abuse and neglect action are as follows: (1) Whether the circuit court erred by denying petitioner a meaningful opportunity to be heard, pursuant to West Virginia Code § 49-6-2(c); (2) Whether the circuit court erred by finding that the DHHR met its burden of proof, which is clear and convincing evidence, that conditions of abuse or neglect existed at the time of the petition's filing, pursuant to West Virginia Code § 49-6-2(c); (3) Whether the circuit court erred by failing to require the DHHR to develop a "realistic case plan" pursuant to West Virginia Code § 49-6D-3, which

appellate jurisdiction is obliged to examine its own power to hear a particular case . . . . Therefore, this Court has a responsibility *sua sponte* to examine the basis of its own jurisdiction." Syl. Pt. 1, in part, *James M.B. v. Carolyn M.*, 193 W.Va. 289, 456 S.E.2d 16 (1995). Upon our review, we decline to address the four assignments of error directly related to her prior abuse and neglect action because this Court lacks appellate jurisdiction to do so. Through these four assignments of error, petitioner challenges the circuit court's rulings in an abuse and neglect action that was dismissed by final amended order on September 11, 2014. Rule 11(b) of the Rules of Appellate Procedure provides that in an abuse and neglect proceeding, "[w]ithin thirty days of entry of the judgment being appealed, the petitioner shall file the notice of appeal and the attachments[.]" Therefore, petitioner was required to file her notice of appeal challenging the circuit court's September 11, 2014, order and prior related rulings by October 13, 2014. It is clear that petitioner failed to file her notice of appeal herein until March 6, 2015, which is well beyond Rule 11's thirty-day requirement.

We have further explained that "it is a petitioner's failure to perfect his appeal, not his failure to file a timely notice of appeal, that deprives the Court of jurisdiction to hear an appeal." *Boardwine v. Kanawha Charleston Humane Ass'n*, No 13-0067 (W.Va. Supreme Court, Nov. 12, 2013)(memorandum decision). Rule 11(f) of the Rules of Appellate Procedure requires that "an appeal in an abuse and neglect case must be perfected within sixty days of the date the judgment being appealed was entered in the office of the circuit clerk." As such, in order for this Court to have jurisdiction to review these four assignments of error, petitioner must have perfected her appeal by November 10, 2014. It is undisputed that petitioner failed to perfect her appeal on these issues until July 13, 2015, which is again well outside Rule 11's clear time frame. Therefore, the Court declines to address these assignments of error because the Court lacks proper jurisdiction.

Petitioner next assigns error to the circuit court's alleged inclusion of J.H., her husband, in these proceedings after his dismissal therefrom in January of 2014, which she claims violated the confidentiality of these proceedings.[6] To the extent petitioner asserts that the circuit court

---

(continued . . . )
would have allowed petitioner to complete its requirements without losing her employment; and (4) Whether the circuit court appointed petitioner "adequate" counsel.\

[6]We note that petitioner's argument on this issue consists of only one sentence with no citations to the record in support. After a thorough review of the parties' arguments and pertinent legal authority, we decline to address this issue to the extent that it invokes the rights of J.H. or the children. We have previously held that

> "[t]raditionally, courts have been reluctant to allow persons to claim standing to vindicate the rights of a third party on the grounds that third parties are generally the most effective advocates of their own rights and that such litigation will result in an unnecessary adjudication of rights which the holder either does not wish to assert or will be able to enjoy regardless of the outcome of the case." *Snyder v. Callaghan*, 168 W.Va. 265, 279, 284 S.E.2d 241, 250 (1981) (citation omitted).

4

erred in maintaining her confidentiality in the matter below, we find that petitioner has failed to carry her burden on appeal to prove that any such confidentiality violation occurred. "On an appeal to this Court the appellant bears the burden of showing that there was error in the proceedings below resulting in the judgment of which he complains, all presumptions being in favor of the correctness of the proceedings and judgment in and of the trial court." Syl. Pt. 2, *Perdue v. Coiner*, 156 W.Va. 467, 194 S.E.2d 657 (1973). In this case, petitioner points to no instance in the record on appeal where such a violation occurred, and we find none. It is unclear from the record on appeal whether J.H. was actually dismissed from the underlying proceedings, and, further, assuming he was dismissed below, while petitioner argues that J.H. was included in the proceedings after his alleged dismissal, she fails to point to any portion of the record where J.H. was physically present or otherwise actually participated in this matter after that time. Moreover, West Virginia Code § 49-5-101 provides that records in cases involving children "may be made available: . . . [p]ursuant to an order of a court of record[,]" subject to limitations of relevancy and safety. As a prior respondent in the proceedings below and petitioner's husband, J.H. could have been granted permission to continue in those proceedings as a relevant and safe individual to include therein. Therefore, as petitioner has failed to satisfy her burden on appeal and all presumptions are made in favor of the correctness of the proceedings, we find that the circuit court did not err with regard to the confidentiality of records in this matter.

Next, petitioner assigns error to the circuit court's refusal to address the allegations in her contempt petition that R.L. neglected the children by failing to "carry out duties as primary custodial and residential parent regarding the children medically[.]" While petitioner claims the circuit court failed to address these concerns, it is clear from the record on appeal that the circuit court considered petitioner's contempt petition and her argument at the February 6, 2015, hearing. It is also clear that the circuit court denied her motion to remove R.L. as primary residential parent and designate her as such. Petitioner is correct that the circuit court stated that it would not address (1) day-to-day decision-making for the children, (2) "mundane domestic strife" between the parties, or (3) other miscellaneous issues raised in the contempt petition. However, contrary to petitioner's assertion, the circuit court addressed her allegations that R.L. failed to carry out his duties as primary residential parent. The circuit court merely did not rule in petitioner's favor. In addressing those allegations, the circuit court ruled that R.L. would remain primary residential parent. Based on the specific circumstances presented in this case, we find no merit to petitioner's argument that the circuit court failed to address her allegations of contempt raised against R.L.

Petitioner's seventh assignment of error is that the circuit court failed to "uphold the purpose" of child welfare as defined by the legislature in West Virginia Code § 49-1-1 when it failed to address all of the issues she raised in her contempt petition. West Virginia Code § 49-1-1(a)(1-3) provides in relevant part that the purpose of the chapter is to provide a "coordinated system of child welfare and juvenile justice," the goals of which are, in part, to "[a]ssure each child care, safety and guidance . . . [s]erve the mental and physical welfare of the child, [and] [p]reserve and strengthen the child's family ties[.]" Despite petitioner's argument that the circuit

---

*Kanawha Cnty. Pub. Library Bd. v. Bd. of Educ. of Cnty. of Kanawha*, 231 W.Va. 386, 398, 745 S.E.2d 424, 436 (2013). Therefore, petitioner has no standing to invoke J.H.'s or the children's rights.

court undermined the children's welfare by failing to address her allegations of contempt against R.L., we find that the circuit court addressed her allegations to the extent that it denied her motion to assume the role of primary residential parent. Further, we find no evidence in the record before us that the circuit court violated the intent of the legislature to assure each child care, safety, and guidance or to preserve and strengthen family ties. Therefore, for those reasons, we find that the circuit court did not err in this regard.

Petitioner's eighth and final assignment of error is that "the circuit court erred by failing to enforce R.L.'s obligation pursuant to West Virginia Code § 48-12-102 to pay medical expenses and by failing to grant petitioner proper relief from the debt she incurred and damage to her credit score from the children's past due uninsured medical expenses." West Virginia Code § 48-12-102 provides "[i]n every action to establish . . . an order which requires the payment of child support, the court shall ascertain the ability of each parent to provide medical care for the children of the parties." *See* Syl. Pt. 2, *Ball v. Wills*, 190 W.Va. 517, 438 S.E.2d 860 (1993) ( "West Virginia Code [§ 48–12–102] mandates that the trial court shall ascertain each parent's ability to provide medical care for their children each time an order requiring child support payments is either established or modified."). Pursuant to West Virginia Code § 48-12-102, in its final amended order, the circuit court established that R.L. would provide medical insurance through his employer if available at a reasonable cost and that he would provide payment for the cost of any uninsured medical expenses. While petitioner argues that R.L. failed "to pay medical expenses" for the children under this statutory provision, it is unclear from the record on appeal what medical expenses she claims were unpaid. Petitioner does not allege that R.L. failed to provide medical insurance for the children, and she further does not argue that the medical expenses at issue were uninsured medical expenses. Given the particular circumstances of this appeal and petitioner's burden to prove error appearing in the record, we find no error in the circuit court's failure to order R.L. to pay medical expenses for the children under West Virginia Code § 48-12-102 because the record before us does not support the claim that said medical expenses fell outside medical insurance coverage provided by R.L.

For the foregoing reasons, we find no error in the circuit court's February 9, 2015, order, and we hereby affirm the same.

Affirmed.

**ISSUED**: October 20, 2015

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II