## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**In Re: K.S.**

**No. 14-0796** (Raleigh County 13-JA-92)

**FILED**

March 16, 2015

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother, by counsel David S. Hart, appeals the Circuit Court of Raleigh County's August 5, 2014, order terminating her parental rights to K.S. The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed its response in support of the circuit court's order. The guardian ad litem for the child, Mary Beth Chapman, filed a response on behalf of the child supporting the circuit court's order and a supplemental appendix. On appeal, petitioner alleges that the circuit court erred in finding that she did not complete the terms of her improvement period, in terminating her parental rights, and in denying the maternal grandmother permanent placement of the child.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In April of 2013, the DHHR filed an abuse and neglect petition against petitioner and her boyfriend, A.P. The petition alleged that the DHHR received an initial referral in June of 2012, indicating that petitioner said she was going to harm the child, K.S., and wanted to get rid of her. Following this referral, the DHHR provided services to the family, during which DHHR employees witnessed the child exhibiting sexualized behavior inappropriate for her age. During a forensic interview in 2012, the child disclosed that she had been sexually abused by a twelve-year-old friend. The petition further alleged that the DHHR received a referral in April of 2013 indicating that during a group therapy session, petitioner disclosed that her boyfriend, A.P., discussed his thoughts about raping the child. According to the petition, petitioner took no action to protect the child after this disclosure, so the DHHR subsequently implemented a safety plan that required A.P to leave the home and not have contact with the child.

The petition further stated that on April 18, 2013, a Child Protective Services ("CPS") worker received information that petitioner said A.P. admitted to touching the child inappropriately, but that petitioner did not believe this occurred. The next day, during a second forensic interview, the child stated that someone told her not to talk about A.P. because petitioner would go to jail. Eventually the child stated that she had to lick an individual named K.'s genitals, and she identified K. as A.P.'s father. That same day, CPS workers initiated a temporary protection plan that required the child to live with her maternal grandparents and not be left alone with petitioner before later filing the instant abuse and neglect petition.

1

In May of 2013, petitioner waived her right to a preliminary hearing. Petitioner then agreed to a written stipulation of failure to protect the child from potential sexual abuse, which the circuit court accepted. Petitioner also moved for a post-adjudicatory improvement period. The circuit court granted the same and included a requirement that petitioner have no contact with A.P. and that she not allow A.P. to have any contact with the child. Moreover, the circuit court ordered petitioner to undergo a psychological evaluation. Finally, the circuit court dismissed A.P. from the case because he was not the child's biological father and claimed no psychological paternity. However, the circuit court enjoined A.P. from having any contact with petitioner or the child. Thereafter, petitioner underwent a psychological evaluation and the report was submitted to the circuit court on July 23, 2013.

In August of 2013, the DHHR submitted a family case plan that included the following requirements, among others, for petitioner: attend all individual counseling sessions; place the child's needs above her own and demonstrate a willingness to endure difficult emotions, such as loneliness in the service of protecting the child; not have any contact with A.P.; focus on completing treatment goals to regain custody of her child instead of focusing on having a boyfriend; participate in structured parent-child interaction therapy; actively participate in parenting sessions; learn age-appropriate discipline techniques and other parenting skills; attend and actively participate in sessions instructing her on the appropriate ways to deal with a special needs child and who is the victim of sexual abuse; and attend weekly psychotherapy sessions to address dependency issues.

In September of 2013, the DHHR was advised of an incident involving the child and a neighbor child that occurred in a tent on her maternal grandmother's property and in the grandmother's absence. The child was reportedly naked with a male child, who was also naked. Neither of the maternal grandparents nor petitioner reported the incident to the DHHR. Due to the lack of supervision and the child's history, she was removed from the grandparents' home and placed in foster care. The maternal grandmother later intervened in the proceedings below and sought permanent placement of the child. The DHHR sought termination of petitioner's parental rights.

Beginning in February of 2014, the circuit court held the first of three dispositional hearings that concluded in May of 2014. During the hearings, testimony established that petitioner failed to successfully complete her improvement period. One provider testified that petitioner failed to accept the fact that the child had been sexually abused. Testimony also established that petitioner took a trip out of state to meet a man in Oklahoma whom she met online. According to petitioner, this man has a history of arrest. The record shows that petitioner was engaged to this man as of the dispositional hearing. The circuit court ultimately terminated petitioner's parental rights and denied placement in the intervening grandmother's home. It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the

evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, the Court finds no error in the circuit court's findings regarding petitioner's failure to complete the terms of her improvement period or in terminating petitioner's parental rights. The Court further declines to address petitioner's assignment of error regarding the child's permanent placement because she lacks standing to assert the same.

On appeal, petitioner alleges that she successfully completed all the requirements necessary to ensure remediation of the conditions of abuse and neglect. However, the Court disagrees. While petitioner argues that the DHHR failed to offer evidence that she did not meaningfully participate in the service below and, instead, offered only subjective opinions that she would never be able to protect her child, the Court notes that this argument mischaracterizes the evidence introduced at the multiple dispositional hearings. The circuit court was presented with ample evidence that petitioner failed to acknowledge the fact that her abuse harmed the child and further that, despite extensive services, petitioner was unable to implement what she learned or correct the underlying conditions of abuse or neglect.

Despite the circuit court's finding, upon substantial evidence, that the child was "a victim of sexual abuse," one CPS worker testified that petitioner "consistently denied that her child, K.S., is a sexual abuse victim." As to her inability to correct her parenting deficiencies, one provider testified that petitioner "simply cannot apply what has been taught to her by providers" such that she could be a safe and proper parent to the child. Moreover, testimony established that petitioner was wholly oblivious to her child's severe and ever-increasing facial tic that one service provider described as "seizure-like." And while petitioner argues that the parties below engaged in "Monday morning quarterbacking" of her various relationships and "actions [taken] in continuing to live her life," the Court finds that the evidence of which petitioner complains instead supports the finding that petitioner failed to correct the underlying conditions of abuse and neglect in the home.

Specifically, the DHHR initially alleged that petitioner failed to protect the child by allowing A.P., a man she had known for less than a week, to move into her house and remain there even after he expressed thoughts about raping petitioner's child. At disposition, the circuit court was presented with evidence that petitioner began relationships with at least five individuals after the proceedings below commenced, even going so far as to travel to Oklahoma to see a man she met online. At the time of the dispositional hearing, petitioner indicated that she was engaged to this man and invited him to live with her, despite her concerns that he is not

3

permitted to see his biological son and had a criminal history. Based on this evidence, one DHHR employee testified that despite attempts to educate petitioner on practical techniques to prevent her partners from preying upon the child, she was fearful petitioner could not protect the child because petitioner "does not get to know these men before she invites them into her home to live with her daughter . . . ." Additionally, this evidence confirmed the psychological assessment that found petitioner "relies upon others to obtain emotional satisfaction" and has "a habit or tendency to institute a brief and intense relationship with men, and then as a result, [put] her emotional needs above the needs of her child."

As such, the circuit court was correct in finding that petitioner's failure and refusal to acknowledge that the child was sexually abused made remediation of the abuse impossible. This is in keeping with our prior holding that

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W.Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re: Charity H.*, 215 W.Va. 208, 217, 599 S.E.2d 631, 640 (2004)). Moreover, we find no error in the circuit court's finding that petitioner's inability to correct the underlying conditions of abuse and neglect, i.e. failure to protect the child, persisted as evidenced by her repeated entry into brief, intense relationships with men in which petitioner places her own needs above those of her child. This evidence formed the basis of the circuit court's finding that petitioner did not substantially complete the terms of her improvement period and could not substantially correct the conditions of abuse or neglect in the near future.

Pursuant to West Virginia Code § 49-6-5(b)(3), a situation in which there is no reasonable likelihood that the conditions of abuse or neglect can be substantially corrected includes one in which

> [t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child[.]

As noted above, the circuit court was presented with substantial evidence that petitioner simply failed to implement what she was taught through services such that the conditions threatening the child persisted through disposition. For these reasons, we find no error in the circuit court's findings regarding petitioner's failure to complete the terms of her improvement period

4

Additionally, while petitioner argues that the circuit court erred in failing to impose the least restrictive dispositional alternative, this same evidence supports termination of petitioner's parental rights. As noted above, the circuit court found that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future, and further found that termination of her parental rights was in the child's best interests. Pursuant to West Virginia Code § 49-6-5(a)(6), circuit courts are directed to terminate parental rights upon such findings. We have also held as follows:

> "Termination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W. Va.Code, 49–6–5 . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W. Va.Code, 49–6–5(b) . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W.Va. 558, 712 S.E.2d 55 (2011). For these reasons, we find no error in the circuit court terminating petitioner's parental rights.

Finally, the Court declines to address petitioner's assignment of error alleging that the circuit court erred in denying the maternal grandmother permanent placement of the child. The record shows that the maternal grandmother was granted intervenor status below and was represented by counsel. Simply put, petitioner lacks standing to assert an assignment of error advancing a claim on behalf of a third party. We have previously held that

> "[t]raditionally, courts have been reluctant to allow persons to claim standing to vindicate the rights of a third party on the grounds that third parties are generally the most effective advocates of their own rights and that such litigation will result in an unnecessary adjudication of rights which the holder either does not wish to assert or will be able to enjoy regardless of the outcome of the case." *Snyder v. Callaghan*, 168 W.Va. 265, 279, 284 S.E.2d 241, 250 (1981) (citation omitted).

*Kanawha Cnty. Pub. Library Bd. v. Bd. of Educ. of Cnty. of Kanawha*, 231 W.Va. 386, 398, 745 S.E.2d 424, 436 (2013).

For the foregoing reasons, we find no error in the decision of the circuit court and its August 5, 2014, order is hereby affirmed.

Affirmed.

**ISSUED**: March 16, 2015

**CONCURRED IN BY**:
Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II