# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **E.A.**

**No. 18-0883** (Summers County 17-JA-36)

**FILED**

**March 15, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother G.A., by counsel Martha J. Fleshman,[1] appeals the Circuit Court of Summers County's September 11, 2018, order terminating her parental rights to E.A.[2] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Mindy M. Parsley, filed a response in support of the circuit court's order and a supplemental appendix. The guardian ad litem ("guardian"), Amy L. Mann, filed a response on behalf of the child in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying her motion for an extension of her post-adjudicatory improvement period and terminating her parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In September of 2017, the DHHR filed an abuse and neglect petition alleging that petitioner was homicidal and suicidal and spent approximately one week in a psychiatric hospital. The DHHR also alleged that the child's father suffered from dementia and was unable to properly care for the child. The adjudicatory hearing was originally scheduled for October of 2017, but was continued in order for petitioner to complete psychological evaluations. The

---

[1]Petitioner's counsel on appeal was her guardian ad litem below due to petitioner's mental illnesses.

[2]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

hearing was again continued in order to allow petitioner to attend a multidisciplinary treatment team meeting scheduled for January 25, 2018. Subsequently, the adjudicatory hearing was continued after new counsel was appointed for petitioner. Due to her mental illnesses, petitioner was also appointed a guardian ad litem to represent her interests. Ultimately, the adjudicatory hearing was held on March 12, 2018, and petitioner stipulated to the allegations of abuse and neglect. Specifically, she admitted that her mental illnesses caused her to be unable to properly care for the child. Accordingly, petitioner was adjudicated as an abusing parent and was granted a post-adjudicatory improvement period. A review hearing was scheduled for June of 2018.

In June of 2018, the circuit court held a review hearing. At this time, petitioner was incarcerated for charges of wanton endangerment, unlawful restraint, and stalking.[3] Petitioner's service providers reported that petitioner had made little or no progress with parenting and mental health services. Petitioner moved for an extension of her post-adjudicatory improvement period, which the circuit court denied. A dispositional hearing was held on August 10, 2018, and was concluded on August 31, 2018. During these hearings, the DHHR presented evidence that petitioner failed to comply with mental health treatment and parenting services. In its dispositional order, the circuit court found that petitioner "failed to progress or use counseling services for the benefit of her mental health issues and treatment for unresolved issues in her family and life circumstances" and that petitioner "failed to comprehend or progress in any parenting [services] provided by the DHHR and its providers." Additionally, the circuit court noted that petitioner's prognosis for improvement was poor and that, according to her psychological evaluation, it was unlikely that Child Protective Services' ("CPS") intervention would "facilitate the reliable attainment of minimally adequate parenting within an acceptable time frame." Further, the circuit court found that petitioner's failure to seek treatment for her mental illnesses harmed the child's health and welfare. The circuit court found that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future and that termination of her parental rights was in the child's best interests. The circuit court also found that due to the progression of the father's dementia, as well as his need for institutionalized care, there was no reasonable likelihood that he could substantially correct the conditions of abuse and neglect in the near future and that it was in the child's best interests to terminate his parental rights. Ultimately, the circuit court terminated both parents' parental rights in its September 11, 2018, dispositional order.[4] It is from this order that petitioner appeals.

The Court has previously established the following standard of review:

---

[3] It is unclear from the record how long petitioner was incarcerated. However, according to the parties, petitioner's incarceration was extended at the DHHR's request and, during her incarceration, petitioner received additional mental health examinations and a danger assessment.

[4] According to respondents, the permanency plan for the child is adoption by her adult half-sister.

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Upon our review, this Court finds no error in the proceedings below.

On appeal, petitioner first argues that the circuit court erred in denying her motion for an extension of her post-adjudicatory improvement period. In support of her argument, petitioner asserts that she participated in services until she was incarcerated.[5] We do not find petitioner's argument compelling.

---

[5]Also in support of this assignment of error, petitioner alleges that the circuit court's findings in its dispositional order were erroneous. However, petitioner fails to properly cite to the record when she references testimony and evidence in violation of Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure, which provides as follows:

The argument must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal. The Court may disregard errors that are not adequately supported by specific references to the record on appeal.

The only documents pertaining to the matter below included in the appendix are the dispositional order and an order following a review hearing and setting the matter for a dispositional hearing. Therefore, this Court cannot consider petitioner's lengthy discussions of evidence or references to testimony in support of her arguments because they are not corroborated by transcripts from the hearings or other documents below. Additionally, petitioner includes documents in the appendix record that were not part of the record below in violation of Rule 7(a) of the West Virginia Rules of Appellate Procedure which states, in part: "An appendix must contain accurate reproductions of the papers and exhibits submitted to the lower court . . . ." Therefore, these documents cannot be considered on appeal.

(continued . . .)

Petitioner acknowledges that, pursuant to West Virginia Code § 49-4-610(6),

> [a] court may extend any improvement period granted pursuant to subdivision (2) or (3) of this section for a period not to exceed three months when the court finds that the [parent] has substantially complied with the terms of the improvement period; that the continuation of the improvement period will not substantially impair the ability of the department to permanently place the child; and that the extension is otherwise consistent with the best interest of the child.

However, petitioner admittedly complied with only some of the terms and conditions of her post-adjudicatory improvement period. While she asserts that she participated in counseling and received treatment for her mental health issues, the record shows that petitioner failed to make any progress with parenting and mental health services during the proceedings. Petitioner also contends that granting her an extension of her post-adjudicatory improvement period would not impair the DHHR's ability to permanently place the child because if she was not successful in completing the terms of the improvement period, the child would remain in the same placement. However, the record shows that petitioner did not substantially comply with the terms and conditions of her post-adjudicatory improvement period.

Petitioner also raises several arguments in support of this assignment of error that appear to imply that because certain timeframes exist in abuse and neglect proceedings, she was entitled to additional time to participate in services. According to petitioner, "it is extremely rare in these matters for any parent to satisfactorily complete all the required terms and conditions established by the [DHHR] during the first 90 days[;]" abuse and neglect matters "require at least one post[-]dispositional improvement period, which results in the parent being permitted at least nine months to complete required terms and conditions[;]" and pursuant to West Virginia Code § 49-4-605, which requires the DHHR to seek termination of parental rights when a child has been in foster care for fifteen out of the last twenty-two months, she was "given only 1/5 of the time permitted under statute, and part of that time was interrupted with the increased incarceration that the [DHHR] requested." None of these arguments have merit. First, West Virginia Code § 49-4-605 is inapplicable because it sets forth situations in which the DHHR is required to seek termination of a parent's parental rights. Second, petitioner fails to recognize that although Chapter 49 permits an abuse and neglect matter to proceed for a maximum duration, she was only entitled to an extension of her improvement period if she met the applicable burden, which she did not. Based on this evidence, we find no error in the circuit court's denial of an extension of petitioner's post-adjudicatory improvement period.

Next, we find no error in the circuit court's termination of petitioner's parental rights.[6] Petitioner argues that the termination of her parental rights was "not necessary" because if the

---

[6]In support of this assignment of error, petitioner argues that the circuit court's termination of the father's parental rights was against public policy. However, we refuse to

(continued . . .)

4

father's parental rights remained intact, adoption of the child was not possible. Further, she contends that permanency for the child could have been achieved by establishing a legal guardianship with the child's half-sister.[7] We do not find this argument persuasive.

West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(c)(3) provides that a situation in which there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected includes one in which the abusing parent "ha[s] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child."

The evidence discussed above also supports the termination of petitioner's parental rights. Petitioner complied with some services, but did not benefit from them. In its dispositional order, the circuit court specifically found that petitioner "failed to progress or use counseling services for unresolved issues in her family and life circumstances." The circuit court also found that it was unlikely that CPS intervention could facilitate the attainment of minimally adequate parenting skills within an acceptable period of time. Additionally, during her post-adjudicatory

---

address this argument. The record on appeal clearly demonstrates that the father was a party to these proceedings and was represented by an attorney, as well as a guardian ad litem, throughout. Simply put, petitioner lacks standing to assert an assignment of error on behalf of another party. We have previously held that

> "[t]raditionally, courts have been reluctant to allow persons to claim standing to vindicate the rights of a third party on the grounds that third parties are generally the most effective advocates of their own rights and that such litigation will result in an unnecessary adjudication of rights which the holder either does not wish to assert or will be able to enjoy regardless of the outcome of the case." *Snyder v. Callaghan*, 168 W.Va. 265, 279, 284 S.E.2d 241, 250 (1981) (citation omitted).

*Kanawha Cty. Pub. Library Bd. v. Bd. of Educ. of Cty. of Kanawha*, 231 W. Va. 386, 398, 745 S.E.2d 424, 436 (2013). This concept has been recognized in regard to parties of child abuse and neglect proceedings. *See In re J.G.*, No. 16-0337, 2016 WL 4611246, at *3 (W. Va. Sept. 6, 2016)(memorandum decision) (recognizing that petitioner father lacked standing to appeal limitation on mother's visitation). As such, the Court declines to address this argument on appeal.

[7]Again, in support of her argument, petitioner includes discussions of evidence as well as quotations from testimony allegedly taken during the proceedings. As discussed above, this Court cannot consider this evidence because it was not corroborated by transcripts or other documentation in the appendix record.

improvement period, petitioner was incarcerated for charges of wanton endangerment, unlawful restraint, and stalking. Based on this evidence, it is clear that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future. Further, contrary to her argument, the termination of petitioner's parental rights was also necessary in order to establish permanency in the form of an adoptive home for the child. This Court has stated that

> [i]n determining the appropriate permanent out-of-home placement of a child under [West Virginia Code § 49-4-604(b)(6)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home can not be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W. Va. 350, 504 S.E.2d 177 (1998). Here, the circuit court specifically found that petitioner's mental illnesses caused harm to the child's welfare and that it was in the child's best interests that petitioner's parental rights be terminated.

Lastly, while petitioner argues that the circuit court should have granted a less-restrictive dispositional alternative such as termination of her custodial rights only, this Court has held as follows:

> "Termination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). As discussed above, the circuit court properly found that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future and that the termination of petitioner's parental rights was necessary in order to permanently place the child in an adoptive home. Therefore, the termination of petitioner's parental rights was appropriate.

For the foregoing reasons, we find no error in the decision of the circuit court, and its September 11, 2018, dispositional order is hereby affirmed.

Affirmed.

**ISSUED**:  March 15, 2019


**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison