STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS

**FILED**

**April 20, 2021**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **M.H.-1 and P.H.**

**No. 20-0737** (Cabell County 19-JA-64 and 19-JA-65)


## MEMORANDUM DECISION


Petitioner Father M.H.-2, by counsel Todd R. Meadows, appeals the Circuit Court of Cabell County's August 21, 2020, order terminating his parental rights to M.H.-1 and P.H.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem, Allison K. Huson, filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating his parental rights rather than placing the children in guardianship with out-of-state relatives.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In April of 2019, the DHHR filed an abuse and neglect petition alleging that petitioner arranged for his live-in girlfriend, T.B., to care for M.H.-1 and P.H. while he was in jail and that the girlfriend severely physically abused the children. Two-year-old M.H.-1 suffered two subdermal hemorrhages, a fractured skull, and pneumonia, and a doctor determined that the child suffered injuries likely caused by being violently shaken and thrown. According to the petition, the girlfriend blamed her own five-year-old child for M.H.-1's injuries. Additionally, three-year-old P.H. was found to be severely malnourished and suffering from a fractured skull and broken clavicle. The DHHR alleged that petitioner neglected the children by placing them in the care of

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, because one of the children and petitioner share the same initials, we refer to them as M.H.-1 and M.H.-2, respectively, throughout this memorandum decision.

an inappropriate caregiver and that he failed to support his children financially and emotionally. That same month, petitioner was released from incarceration on a pretrial bond and then waived his preliminary hearing.

The circuit court held an adjudicatory hearing in June of 2019, wherein petitioner stipulated to the allegations in the petition. Petitioner further stated that the children had last been in his care between August and November of 2018, and that since that time the children had been living with a sister in Michigan until petitioner's girlfriend brought the children to West Virginia in March of 2019. The circuit court accepted petitioner's stipulation and adjudicated him as an abusing parent.

At a dispositional hearing in September of 2019, the circuit court terminated the mother's parental rights. At that hearing, the DHHR presented evidence that petitioner was arrested and incarcerated in early August of 2019 for new charges of burglary, strangulation, violation of a domestic violence protective order, and domestic battery. These charges resulted from petitioner attacking his girlfriend, who sustained a collapsed lung and other injures. Petitioner testified that he recently pled guilty to drug charges in early August of 2019 and was serving probation when he was arrested for these new charges a few days later. Petitioner also stated that since adjudication, he had tested positive for marijuana or missed some drug screens but remained employed. The DHHR worker explained that she contacted two different family members for which petitioner gave her contact information and that both members declined to take both children.

In March of 2020, the circuit court held a contested dispositional hearing. Petitioner remained incarcerated but appeared for the hearing. The DHHR presented evidence of petitioner's extensive criminal history and repeated incarcerations, the issues surrounding his current criminal charges, his lack of a bond and relationship with the children, and complete lack of cooperation with the DHHR throughout the proceedings. Specifically, while petitioner was released on probation, he failed to attend a multidisciplinary team meeting to develop a family case plan, refused to provide an address to the DHHR and be truthful that he had been living with his girlfriend, and violated a court's no contact order with her. Petitioner also tested positive for marijuana and sporadically submitted to drug screens. Petitioner testified that he had no anger management issues and had "no problems whatsoever" regarding his parenting abilities. He further stated that if the children were reunified with him, they would not live with him but instead would live with his cousin in Michigan.

Additionally, a large portion of the evidence presented was devoted to the permanent placement of the children. Petitioner argued that an Interstate Compact on the Placement of Children ("ICPC") home study should have been performed on his cousin's home in Michigan and that his cousin should obtain guardianship of the children. The DHHR worker explained that she had attempted to implement an ICPC home study with the cousin in September of 2019 and that she had met the cousin once and communicated with her several times. However, the worker stopped the ICPC home study process when she learned that the children had no relationship with the cousin as they had only stayed in her home for one week in the summer of 2018. She further explained that at that point the children had lived with the foster family for more than six months and had formed more of a relationship with the foster parents than with petitioner's cousin. Also, the worker stated that due to M.H.-1's severe physical abuse, he had extensive specialized medical needs, which were being met by the current foster family.

2

The circuit court recessed for final arguments which were held in June of 2020. Petitioner moved for a post-dispositional improvement period. The DHHR argued against the granting of an improvement period, citing petitioner's noncompliance while released from incarceration and his inability to participate due to his reincarceration. The circuit court denied petitioner's motion for a post-dispositional improvement period based upon his failure to cooperate with the DHHR to develop a case plan and his inability to participate in an improvement period. The DHHR also stated that the children had been in DHHR custody and placed with the same foster family for over fourteen months and that it was seeking the termination of petitioner's parental rights. Having reviewed the evidence presented and heard the augments of counsel, the circuit court concluded that the children were in petitioner's care only two months during the previous two years; petitioner abdicated his parental responsibilities by placing the children with numerous alternative caregivers, the last of which severely physically abused the children; petitioner was aware that his girlfriend was violent with the children yet did nothing to have them removed from her care; petitioner's repeated criminal actions and resultant incarcerations prevented him from caring for and protecting the children; and that petitioner's arrests after adjudication prevented him from participating in an improvement period or supervised visitation with the children. Most importantly, the circuit court noted that prior to petitioner's most recent arrest and incarceration, he had not consistently drug screened, obtained housing, engaged in therapy or any instruction to help his parenting deficits, and generally failed to comply with any of the DHHR's requests. Accordingly, the circuit court found that there was no reasonable likelihood that petitioner could correct the conditions of abuse or neglect in the near future and that termination of his parental rights was necessary for the children's welfare. The circuit court terminated petitioner's parental rights by its order entered on August 21, 2020. Petitioner appeals the dispositional order.[2]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

---

[2]The mother's parental rights were terminated below. The permanency plan for the children is adoption by their foster family.

On appeal, petitioner argues that the circuit court erred in terminating his parental rights rather than employing a less-restrictive dispositional alternative by placing the children in a legal guardianship with his cousin pursuant to West Virginia Code § 49-4-604(c)(5). In support, petitioner contends that the DHHR "conducted an incomplete investigation into the guardianship placement of the children with family in Michigan." According to petitioner, placing the children in a legal guardianship was in their best interests and not the termination of petitioner's parental rights. Petitioner claims that the DHHR "engaged in no concurrent planning with available family placement and only demonstrated that [p]etitioner was unlikely to remedy the conditions" of abuse and neglect.

At the outset, we address petitioner's arguments that the children should have been placed with a relative in Michigan. We have previously held that

> "[t]raditionally, courts have been reluctant to allow persons to claim standing to vindicate the rights of a third party on the grounds that third parties are generally the most effective advocates of their own rights and that such litigation will result in an unnecessary adjudication of rights which the holder either does not wish to assert or will be able to enjoy regardless of the outcome of the case." *Snyder v. Callaghan*, 168 W.Va. 265, 279, 284 S.E.2d 241, 250 (1981) (citation omitted).

*Kanawha Cty. Pub. Library Bd. v. Bd. of Educ. of Cty. of Kanawha*, 231 W. Va. 386, 398, 745 S.E.2d 424, 436 (2013). This concept has been recognized in regard to parties of child abuse and neglect proceedings as well. *See In re J.G.*, No. 16-0337, 2016 WL 4611246, at *3 (W. Va. Sept. 6, 2016)(memorandum decision) (recognizing that petitioner father lacked standing to appeal limitation on mother's visitation). Here, petitioner's cousin could have moved to intervene in the proceedings but did not. The record shows that the cousin was fully aware of the proceedings, met with the DHHR worker at least once, and was present in the courthouse for one hearing. Permanent placement of the children in the cousin's home is a privilege that she, not petitioner, would enjoy and it is she who must advocate for that position. Petitioner does not have standing to advocate on L.H.'s behalf and, therefore, is entitled to no relief on appeal. Even more importantly, the record clearly shows that the DHHR investigated placement with petitioner's cousin and learned that the children had no bond or relationship with her. As such, we find no error in the circuit court's determination that placement of the children in their current foster home was in their best interests, especially given the fact that M.H.-1 requires specialized care due to the extensive physical abuse and that the foster family is equipped to provide this heightened care.

Next, we address the termination of petitioner's parental rights. West Virginia Code § 49-4-604(c)(6) provides that circuit courts are to terminate parental rights upon finding that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(d)(3) provides that a circuit court may find that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected when the abusing parent has

> not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as

4

evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare, or life of the child.

With these parameters in mind, it is clear that the record supports the circuit court's finding that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect, given his complete failure to cooperate with the DHHR to formulate a family case plan or comply with services offered by the DHHR. The goal of the family case plan "should be the development of a program designed to assist the parent(s) in dealing with any problems which interfere with his ability to be an effective parent and to foster an improved relationship between parent and child with an eventual restoration of full parental rights a hoped-for result." *In Interest of Carlita B.*, 185 W. Va. 613, 625, 408 S.E.2d 365, 377 (1991). While it is true that petitioner was arrested and reincarcerated in August of 2019, he was free and serving probation for approximately five months prior to his arrest. During that time, he failed to attend an MDT meeting, did not consistently drug screen, tested positive for marijuana, refused to provide an address to the DHHR, did not obtain stable housing, violated a court's order when he attacked his girlfriend, violated the terms of his probation for his criminal charges in Ohio, and otherwise failed to cooperate with the DHHR to address the issues of abuse and neglect. Most importantly, petitioner testified that he had no parenting deficiencies and that if the children were returned to him, he would again leave them with another caregiver and abdicate his parenting responsibilities. We have long held that "[i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged." *In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted).

Considering petitioner's complete failure to cooperate with the DHHR's offered services or follow through with a family case plan, it is clear that that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect. Additionally, because the circuit court properly made such a finding, it was not required to implement a less-restrictive dispositional alternative such as a guardianship of the children pursuant to West Virginia Code § 49-4-604(c)(5). We have held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011).

In support of this argument, petitioner cites Syllabus Point Three of *In re Cecil T.*, 228 W. Va. at 89, 717 S.E.2d at 873, which provides in relevant part that

> [w]hen no factors and circumstances other than incarceration are raised at a disposition hearing in a child abuse and neglect proceeding with regard to a parent's ability to remedy the condition of abuse and neglect in the near future, the circuit

5

court shall evaluate whether the best interests of a child are served by terminating the rights of the biological parent in light of the evidence before it.

However, as more fully discussed above, the record is clear that the circuit court considered evidence other than petitioner's incarceration at the time of the dispositional hearing when it terminated his parental rights. Therefore, the analysis described in *Cecil T.* was not required below and petitioner is entitled to no relief in this regard.

Regarding petitioner's argument that the termination of his parental rights was not in the children's best interest, he offers nothing in support of this argument other than his assertion that the children should be with family and that these children have been raised by various relatives throughout their lives. However, petitioner ignores the children's needs for continuity in care and a stable living environment and that these children had lived with the same foster family for over fourteen months by the time of the final dispositional hearing—the longest stint they had lived in the same place with the same caregivers in their young lives. He further ignores M.H.-1's long-term medical needs and potential disability as a result of his severe injuries from physical abuse. As we have previously noted,

> the early, most formative years of a child's life are crucial to his or her development. There would be no adequate remedy at law for these children were they permitted to continue in this abyss of uncertainty. We have repeatedly emphasized that children have a right to resolution of their life situations, to a basic level of nurturance, protection, and security, and to a permanent placement.

*State ex rel. Amy M. v. Kaufman*, 196 W. Va. 251, 257-58, 470 S.E.2d 205, 211-12 (1996).

Insofar as petitioner argues that he should have been given more time to correct the conditions of abuse and neglect while the children remain in limbo, we have previously held the following:

> "[C]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened, and this is particularly applicable to children under the age of three years who are more susceptible to illness, need consistent close interaction with fully committed adults, and are likely to have their emotional and physical development retarded by numerous placements." Syl. Pt. 1, in part, *In re R.J.M.,* 164 W.Va. 496, 266 S.E.2d 114 (1980).

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 4. Accordingly, we find no error in the circuit court's finding that the termination of petitioner's parental rights was necessary for the children's welfare.

For the foregoing reasons, we find no error in the decision of the circuit court, and its August 21, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**:  April 20, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton